Marilyn VAN HOOSER,
Plaintiff–Appellant,

v.

WARREN COUNTY BOARD OF EDU-
CATION, Defendant–Appellee.

Supreme Court of Tennessee,
at Nashville.

Jan. 7, 1991.

Opinion on Petition to Rehear
April 8, 1991.

Charles Hampton White, Richard L. Colbert, Nashville, for plaintiff-appellant.

William T. Ramsey, Nashville, for defendant-appellee.

## OPINION

DAUGHTREY, Justice.

This case arises out of the alleged misconduct of a teacher, the efforts made to settle the case, and, when those efforts failed, the procedures implemented to seek and obtain her dismissal. It presents substantive issues arising under the Teacher Tenure Act, T.C.A. §§ 49–5–501 et seq., and the Open Meetings Act, T.C.A. §§ 8–44–101 et seq.

The teacher in question, Marilyn Van Hooser, sued for reinstatement and back pay, claiming that she was improperly suspended and then dismissed. After an evidentiary hearing in the trial court, the chancellor ruled in favor of the defendant school board. The plaintiff has now appealed the judgment of the trial court, alleging among other things that the chancellor failed to review the evidence *de novo*. We conclude that the record supports the judgment, but that there is an ambiguity in the chancellor's memorandum opinion with regard to the standard of review. We therefore remand for the purpose of clarification on this limited procedural issue.

## FACTUAL BACKGROUND

When the events underlying this case began, Marilyn Van Hooser was a tenured teacher in the Warren County public school system, assigned to the William Biles Elementary School. She had been having problems getting the third-graders in her class to do their assignments. As she described it, she tried to convey to her students that "you just don't go through life not being responsible, and you do have to learn things ... and that the third grade is not easy." In an attempt to get them to do their work, Van Hooser had kept her students from going to physical education, and she required them to take their work with them to lunch. She testified that she had not prevented them from going to art and music classes, as she had physical education, because "they didn't care about that and P.E. was important to them." When those efforts failed, Van Hooser decided to use shame and embarrassment to motivate her students to do their work. She testified that she gave them two or three weeks notice that, if they did not start doing their assignments, she was going to have to embarrass them by paddling them in front of the other students. On March 23, 1983, the day of reckoning arrived. Van Hooser, in the presence of a teacher's aide and the rest of the students in the class, paddled at least eight of her students for failing to do their assignments.

On the following morning, Van Hooser was barred by school officials from entering her classroom. She reported to the superintendent's office, as instructed, and Bryan Knight, the superintendent of schools, informed her that she was suspended, pending investigation of the previous day's events.

During the course of the investigation conducted by Bob Mason, director of personnel, the details of the paddling incident were revealed. In addition to reviewing the Department of Human Services photographs of the bruises on the buttocks of the children, he talked to the parents and five or six of the children who had been paddled. These children told him that they had each received as many as ten or fifteen licks. Van Hooser denied this, and Mason recalled that she admitted to six or seven licks on some of the children. Aleta Robinson, the teacher's aide who witnessed the paddlings, told Mason that the students were given, in general, six or eight licks each and that in her opinion, the paddlings

were not excessive. Although no written report was prepared, Mason testified that he turned the notes from his investigation over to Knight within a few days to a week.

Several of the parents of the children who were paddled testified at a public hearing held in May of 1985. They confirmed that their children were bruised and that the children told them they had been paddled for failing to turn in their assignments. Department of Human Services social workers also testified about speaking with some of the students, who told them about being paddled for failing to get their work done.

Mason's investigation revealed that the principal of the school, Jimmy Blankenship, had previously instructed Van Hooser not to paddle students. Blankenship testified that he gave her this instruction during the 1979–80 school year after a paddling she administered was witnessed by two other teachers, Marilyn McGee and Sandra Brownyard. Both of these teachers complained to Blankenship about the excessiveness of the paddling and told him that they did not want to serve as a witness for any more paddlings administered by Van Hooser. At the public school board hearing held on May 28, 1985, Brownyard testified that she was concerned because Van Hooser administered more than the three licks to which they were limited by express instructions in a faculty meeting and by language in the teachers' handbook governing corporal punishment. She testified that she thought that Van Hooser was angry at the time. She also thought that the paddling was too hard because Van Hooser "swung back very far" and "seemed to use a great amount of force," causing the child to lose balance. McGee testified that, when she and Brownyard expressed their concern to Van Hooser, her reply was to the effect that if the child had been doing his homework, he would not have gotten any licks at all. McGee further testified that Van Hooser told her that Blankenship had spoken with her about the incident and told her not to paddle any more, but rather to refer any discipline problems to him.

Although Van Hooser denied ever having been instructed not to paddle students, Mason testified that when Van Hooser was called to the office on the morning of March 24, 1983, she admitted receiving this instruction. She explained at that time that she thought she was not supposed to spank students for discipline, but that the paddlings on March 23, 1983, were not for "discipline." At trial, Van Hooser stated that at the March 24th meeting, she had tried to explain the difference between what she had done and "spanking."

Van Hooser did admit one instruction from the principal with respect to paddling. It was the practice in Van Hooser's classroom that children would generally receive a paddling on their birthday. After a particularly egregious incident involving a student named Tammie Dodd, during the course of which Van Hooser hit her with a paddle and also allowed the students in the class to paddle her, Van Hooser conceded that Blankenship told her to curtail this practice. Tammie Dodd's mother later testified that her daughter's buttocks were "black and blue" and that she had to be taken to a doctor.

After Van Hooser was suspended, everyone involved began to make efforts to resolve the matter. There had never been any question raised about Van Hooser's ability as a teacher prior to these incidents, and the principal of the school wanted to put her back in the classroom. Because Van Hooser had been told that criminal charges might be brought against her, she hired Thomas Miner as her attorney rather than relying on the attorneys with the Tennessee Education Association. In fact, the matter was submitted to the grand jury, but no indictment was returned. After the criminal matter was thus resolved, Miner began negotiations with counsel for the school board, Michael Galligan.

Miner's first effort in this regard was to delay any proceedings pertaining to Van Hooser that might otherwise have arisen in the regularly scheduled school board meetings. His letter of May 23, 1983, to Galligan states:

This will confirm our telephone conversation of May 19, 1983 during which I advised you that I represent Marilyn Van Hooser in the above referenced matter and requested that the issue of Marilyn Van Hooser's suspension not be addressed at the May 19, meeting of the Board of Education. I believe that delaying the presentation of this matter until the regular June meeting would be beneficial to all parties involved in that it would give us a sufficient opportunity to discuss the problems and alternative solutions thereto and hopefully arrive at a solution which is satisfactory to all parties concerned.

This was followed by a letter to Galligan dated June 2, 1983, in which Miner stated:

As you will recall the matter of Marilyn Van Hooser's suspension was taken off the agenda of the last meeting of the school board so that we might have time to discuss it before further action is taken. The June meeting of the school board will be upon us in about two more weeks. We need to use this time to determine if we can't find a practical solution to this matter.

Negotiations continued and Miner eventually transmitted a draft settlement proposal to Galligan. In his letter of July 7, 1983, which accompanied the draft, he stated:

You will find enclosed a three-page document headed Conditions for Continued Employment. As per our previous discussions this is a draft proposal illustrating steps which might be taken from which both sides can negotiate. My client has indicated that she is willing to accept all the conditions set forth in this agreement in principle, however, she is out of town for the Fourth of July holiday and has not seen the actual document. . . .

\*   \*   \*   \*   \*   \*

I understand because of all the publicity given this matter in the past and the state sunshine laws it will probably be necessary for the board of education to make some form of statement regarding the conditions of Marilyn Van Hooser's reemployment. If and when such a statement is to be issued, I hope that the board of education will take into consideration that Marilyn Van Hooser also has certain rights of privacy and that some of the conditions set out in this agreement are sensitive in nature and some could compromise her ability to deal with students, parents and administrators. I strongly encourage the board of education and superintendent to take this into consideration in making any public pronouncements.

Under the terms of the proposed settlement, Van Hooser was to remain suspended through the end of the term and forfeit $4,166 in pay. She was to be reinstated under probation the following term and possibly transferred. She was not to administer corporal punishment for any reason, and she was to undergo psychiatric counselling. Miner later testified that his client knew of these terms and had agreed to them, although she had not seen a final draft of the so-called "Conditions for Continued Employment," which set the terms out in writing.

By August 1983, the agreement had been worked out but Van Hooser still had not actually signed the Conditions. Galligan had kept the members of the Warren County Board of Education apprised of the situation as negotiations progressed, and he met with them again at a regularly scheduled school board meeting on August 16, 1983. The minutes of the meeting reflect that, in addition to other business conducted at the meeting, "[t]he board retired to discuss the status of ... Marilyn Van Hooser in private with Attorney Galligan." The minutes fail to reflect that any further discussion was held with respect to Van Hooser. Galligan admitted that, at the time of this closed meeting, there was no lawsuit pending and no charges had been preferred against Van Hooser with the board.

At the closed meeting, Galligan explained the terms of the agreement to the board. He told the board that Van Hooser's attorney had indicated that she had agreed to these terms. Although no vote was taken,

all the board members present at this meeting assented to the settlement. However, there is no mention of the Conditions anywhere in the school board's minutes prior to formal charges being preferred against Van Hooser.

In the fall of 1984, Knight contacted Van Hooser and told her that a position was available for her. At that time, no formal charges had yet been preferred against her as a result of the investigation during the previous school year, and the suspension imposed during the investigation had not been officially lifted. As a result, although the matter had never been formally presented to the school board, nor acted upon, Van Hooser was transferred from a position as a classroom teacher to employment filling two part-time librarian slots.

Inexplicably, there was a lengthy delay in getting the document formalizing the settlement of this matter signed by Van Hooser and by a representative of the school board. Van Hooser followed the advice that Miner testified he gave her— she did not take the initiative to comply with the Conditions because no one had taken any action to require her to comply. Finally, in February 1984, Mason, at Knight's request, took a copy of the Conditions to Van Hooser for her signature. She refused to sign it without discussing it with her lawyer. Her testimony was that no one told her there was any time limit on signing the document.

The school board met on March 27, 1984, and adopted Knight's list of teachers to be rehired for the 1984–85 school year. Marilyn Van Hooser's name was not mentioned in the meeting, nor was it included on the list.

On April 12, 1984, Van Hooser signed and returned her copy of the Conditions for Continued Employment. She apparently did so only after receiving a letter, dated April 11, from the school board. The letter stated:

> You are hereby notified that the Warren County Board of Education met on March 27, 1984, and failed to rehire you as a teacher in the Warren County School System for the 1984–85 school year. The reason for your not being rehired is because of your neglect to sign the previous agreement entitled, Conditions for Continued Employment, and failure, on your part, to comply with the provisions of same document.
>
> In our meeting on March 28, 1984, you indicated through your attorney, Mr. Thomas Miner, that you would study the probationary employment document and contact us no later than Monday, April 3, 1984, with a decision. You have made no effort to contact us on or prior to this date. Your contract of employment will therefore terminate at the close of the present school year. If you plan to comply with the terms of your agreed upon contract, please advise and make arrangements to do so.

After signing the Conditions, Van Hooser began to make attempts at compliance, but these efforts turned out to be too few and too late.

The first formal, official effort to resolve this matter occurred during a school board meeting held on September 20, 1984. At that meeting, Galligan read a letter that Van Hooser had written to the board, complaining about their failure to rehire her for the 1984–85 school year. A motion was made "not to rehire her due to her actions in the [sic] non-compliance with the board's instructions." The motion passed unanimously. After this meeting Galligan prepared a notice, dated October 15, 1984, and later an amended notice, dated February 14, 1985, in an effort to afford Van Hooser notice of the charges against her in compliance with the applicable statutes.

On October 19, 1984, Van Hooser filed suit seeking both reinstatement as a teacher in the Warren County School System and damages.

Some five months later, on March 28, 1985, the school board again voted on the question of Van Hooser's dismissal, in an attempt to comply fully with the Teacher Tenure Act and the Open Meetings Act. The minutes of that meeting, in pertinent part, state:

> Mr. Mike Galligan, Attorney for the school board, addressed the board con-

cerning the Marilyn Van Hooser case. He told the board that Former Superintendent Bryan Knight suspended Ms. Marilyn Van Hooser because of excessive paddling, violation of the school board policy, and violation of rules set by Jimmy Blankenship, principal at William Biles school. Mr. Galligan told the board that in the Spring of 1983, he prepared charges against Ms. Van Hooser for former Superintendent Knight to present to the board. He stated that Knight did not bring the charges to the board at the request on Mr. Tom Miner, Attorney for Ms. Van Hooser, because of adverse publicity that might result in damaging her career and reputation. Mr. Miner requested that an investigation be conducted. Mr. Bob C. Mason, Personnel Director, conducted an investigation for Warren County Schools. The Department of Human Services conducted an investigation which included photographs of the allegedly abused children. (Mr. Larry Ross from the Office of the District Attorney also conducted an investigation.) After these investigations, a "Conditions of Employment" was drawn up by Mr. Miner, Mr. Galligan, Mr. Knight, and Mr. Mason. (Copy to become part of the minutes.) He further stated to the board that on April 12, 1984, she signed the agreement after her name was left off the list of teachers rehired in March 1984. He told the board the reason she was left off the list was because she had not complied with the agreement at the proper time. In September, 1984, Ms. Van Hooser was again not rehired.

Mr. Galligan told the board that this case has not followed correct legal procedures to dismiss a teacher. He asked the board if they wanted to proceed with the charges. Mr. Galligan said in the future, the board should follow correct legal procedures instead of trying to keep publicity down at someone's request. He told the board that by trying to help this individual it caused the board to follow incorrect dismissal procedures in this case. Galligan stated that the charges could still be valid if properly handled.

After further discussion, Mr. Galligan read the charges brought against Ms. Van Hooser by Mr. Bob C. Mason. (Copy to become part of these minutes.) After hearing the charges, the board determined that the charges were severe enough that they would warrant having a hearing on them and taking appropriate action. Motion by Mansfield, seconded by Clark that the charges are such that if true, board action would be appropriate to dismiss, suspend, or probate Ms. Van Hooser. Therefore, the charges should be sent to Ms. Van Hooser and she should be notified she has a right to a hearing (Copy of the letter to Ms. Van Hooser from the board shall become a part of these minutes.) Motion passed unanimously.

The board sent notice of the charges to Van Hooser in a letter dated March 29, 1985, which stated:

Charges have been made charging you with offenses which would justify your dismissal/suspension or probation/. These charges were made in writing by the Director of Personnel of the Warren County School system, and they are as follows:

1. You paddled students after you had been told not to do so by the Principal of William Biles School, Mr. Jimmy Blankenship.
2. You violated the orders of said principal not to paddle students more than three licks.
3. You have violated the school board policies in not having proper witnesses present during the paddling of students.
4. You allowed other students to paddle another student on one occasion.
5. You paddled students for improper purposes.
6. You used excessive force in paddling students.

In addition to the above, you agreed, through your attorney, Thomas J. Miner, to certain conditions of re-employment which you were to have signed during the summer of 1983. However, you did not sign the document outlining these

conditions until April 12, 1984. It is alleged that you did not comply with that agreement and, therefore, violated your agreements with the Warren County Board of Education, which would be insubordination as defined in Tennessee Code Annotated, § 49–5–501.

The school board finds that these are charges which would justify dismissal/suspension or probation/ of a teacher *if they are found to be true* and, therefore, pursuant to Tennessee Code Annotated § 49–5–511, we are notifying you that you have a right to a hearing on these charges and that you have thirty days in which to request such a hearing pursuant to Tennessee Code Annotated § 49–5–512.

Enclosed is a form promulgated by the Commissioner of Education of the State of Tennessee which may further explain your rights to you.

Van Hooser did avail herself of the right to a public hearing. It was held on May 28, 1985. At the hearing, witnesses testified against her and on her behalf. Her attorneys tried to explain the requirements of the Open Meetings Act and the Teacher Tenure Act and argued that the actions of the superintendent and the school board had violated both of these statutes. In the end, the board voted to dismiss Van Hooser.

Van Hooser amended her complaint, filed previously on Oct. 19, 1984, to seek the judicial review afforded by T.C.A. § 49–5–513. A trial was held at the close of which the chancellor determined that the school board was justified in dismissing Van Hooser. The chancellor held that there was no violation of the Teacher Tenure Act because a hearing was eventually held. The chancellor also stated that the Open Meetings Act was inapplicable because of Van Hooser's request through her attorney that the matter be handled circumspectly, and because of the nature of the resulting closed school board meeting with Galligan on August 16, 1984.

Van Hooser's appeal from the decision of the trial court presents three issues. She asserts that the chancellor's review of the school board's actions was conducted under an improper standard of review. She also asserts that the manner in which her case was brought before the school board violated both the Open Meetings Act, T.C.A. §§ 8–44–101 et seq., and the Teacher Tenure Act, T.C.A. §§ 49–5–501 et seq. Based on these alleged errors, Van Hooser seeks reinstatement as a classroom teacher, as well as damages for lost income in the 1982–83 and 1984–85 school years. The defendant school board has apparently conceded that it is liable to the plaintiff for wages she lost during the latter school year, because of the school board's failure to comply fully with the provisions of the tenure statute. That issue is no longer before us.

### STANDARD OF REVIEW

■ We have most recently discussed the standard of review to be applied to school board determinations in *Cooper v. Williamson County Board of Education*, 746 S.W.2d 176 (Tenn.1987). Distinguishing between the standards applicable to review by common law writ of certiorari and by statutory writ of certiorari, we held that the review afforded by T.C.A. § 49–5–513 is not limited to a determination of whether the board acted within its jurisdiction, or acted arbitrarily, capriciously, or illegally. *Id* at 179. Rather, it is a trial *de novo*, T.C.A. § 49–5–513(g), in which the chancellor must reduce his findings of fact and conclusions of law to writing and include them in the record. § 49–5–513(h). This appeal is akin to an appeal from a decision of a general sessions court in that the chancellor is required to reconsider and redetermine all the issues of fact, as well as law as if no such determination had been previously made. *Cooper,* at 181. Hence, the chancellor must substitute his judgment for that of the board. *Id* at 182. The scope of review is not confined to whether the evidence considered by the school board preponderates in its favor, and no presumption attaches to the school board's determinations. *Id* at 181.

■ Unfortunately, in this case we are unable to say with certainty that the cor-

rect standard of review was applied. In his memorandum opinion, the chancellor summarized the events that precipitated Van Hooser's dismissal. It appears that this summary may have been based upon evidence presented at trial, but there is no designation as such. In closing, moreover, the chancellor noted that a public hearing had been held, that the plaintiff had not testified, and that "[i]f there had been other evidence presented perhaps their [the board members'] minds might have been changed." The opinion then concludes, "The Court cannot speculate on this [possibility]. It can only conclude that the evidence presented [at the public hearing? or at the later trial?] was sufficient to sustain the termination. For these reasons the Court finds that the Warren County School Board was justified in dismissing the plaintiff."

At the very least, this language in the chancellor's opinion creates an ambiguity concerning the standard or review applied to the facts in this case. We therefore find it necessary to remand the matter for the purpose of clarification. If the chancellor based his ruling on the evidence presented to him at trial, de novo, he need only say so in a one-sentence amendment to his memorandum opinion. If, on the other hand, his ruling was based on a determination that evidence before the board justified the board's conclusion and that the proof at trial did not preponderate otherwise, then it will be necessary for him to reweigh the evidence presented in court in conformity with the procedure outlined in Cooper and recertify his findings of fact and conclusions of law to this Court.

## OPEN MEETINGS ACT

Van Hooser next asserts that the board engaged in repeated violations of the Open Meetings Act, but she specifically seeks relief based on her contention that the school board violated the Open Meetings Act when they met in closed session with their attorney Michael Galligan on August 16, 1983, to discuss her situation.

The defendants assert in response that there was no violation of the Open Meet-

ings Act. They contend that the attorney-client exception recognized in Smith County Education Association v. Anderson, 676 S.W.2d 328 (Tenn.1984), applies in this situation because, although there had been no charges preferred against Van Hooser as of August 16, 1983, there was a pending controversy that was likely to result in litigation between the school district and Van Hooser. Further, they assert that Van Hooser is estopped to assert any violation of this Act because of her requests through her attorney that her privacy interests be respected.

■ We agree with the defendants' assertion that the board had a right to meet with its attorney to discuss the pending controversy pertaining to Marilyn Van Hooser. However, to the extent that the board made decisions or deliberated toward a decision, this was a "meeting" to which the Open Meetings Act applies. T.C.A. § 8–44–102(c). Given testimony that the Conditions were discussed in the meeting and the fact that these Conditions are not mentioned anywhere else in the minutes, we must assume that the board acted to approve the Conditions in this private meeting. Because this action was taken in violation of the Open Meetings Act, the board's attempted settlement of this controversy by approval of the Conditions for Continued Employment is void and of no effect. T.C.A. § 8–44–105.

■ However, our holding that the action taken by the board in this regard is of no effect does not mean that Van Hooser is entitled to the relief that she seeks. The defendants concede that Van Hooser is entitled to back pay for the 1984–85 school year. The real question on appeal concerns whether Van Hooser should be reinstated. The board's violation of the Open Meetings Act does not entitle her to reinstatement. She may be reinstated only if, after remand, the chancellor finds that the evidence presented against her at the public hearing in May 1985 fails to establish any of the causes for dismissal set forth in T.C.A. § 49–5–511(a)(2).

■ Given our decision with respect to the attorney-client exception, we pretermit consideration of the defendants' additional assertions on this issue. We would, however, note that the actions of Van Hooser and her attorney contributed to the ultimate violation of the Act. We would be hesitant to grant her relief because of this fact alone because, generally, injunctions will not issue to relieve a party from a situation brought about by that party's own act or omission. *Winters v. Allen,* 166 Tenn. 281, 284, 62 S.W.2d 51, 52 (Tenn. 1933).

## TEACHER TENURE ACT

■ Van Hooser finally asserts that the manner in which her suspension from teaching was handled violated the Teacher Tenure Act, and she therefore seeks to be awarded back pay for the period of her suspension at the end of the 1982–83 school year. Van Hooser was suspended on March 24, 1983, pending the investigation of the events of the day before. Testimony at trial indicates that this investigation was completed no later than the beginning of April 1983, but there is no mention of Marilyn Van Hooser's name in any of the board's minutes for the rest of the school year. In fact, Van Hooser was re-employed and transferred to another position for the 1983–84 school year without any mention of the suspension or approval of the transfer in the school board's minutes. Van Hooser asserts that she is entitled to back pay for the period of her suspension because of the delay in taking action after the termination of the investigation.

T.C.A. § 49–5–511, in pertinent part provides:

Dismissal or suspension of teachers in general.—(a)(1) No teacher shall be dismissed or suspended except as provided in this part.

(2) The causes for which a teacher may be dismissed are as follows: Incompetence, inefficiency, neglect of duty, unprofessional conduct, and insubordination, as defined in § 49–5–501.

(3) A superintendent may suspend a teacher at any time that may seem necessary, pending investigation or final disposition of a case before the board or an appeal, provided that if the teacher is vindicated or reinstated, he shall be paid the full salary for the period during which he was suspended.

Although "reinstatement" and "vindication" are not defined in the statute, we hold that the events in this case can not possibly be construed as constituting either of these events.

All of the proceedings to this point have terminated in decisions against Van Hooser. Obviously, she has not been "vindicated" of the charges underlying her suspension. However, if on remand, the chancellor determines that her dismissal was improper, then back pay for the period of her suspension would be appropriate.

Likewise, at this point, Van Hooser can not be said to have been "reinstated." Reinstatement implies restoration to a position from which a person has been removed. Van Hooser was not restored to a position teaching third-graders. In fact, she was moved to a position where she had less student contact and less opportunity to engage in the type of conduct for which she was suspended. Although she was temporarily reemployed in the Warren County School System, then-superintendent Knight testified that this action was taken because negotiations were continuing with her attorney to settle the matter. He could have continued the suspension until the final disposition of the matter on appeal. T.C.A. § 49–5–511(a)(3). Hence, we cannot construe Van Hooser's reemployment to be "reinstatement" such as to allow her to recover back pay for the period of her suspension, when that suspension resulted from charges for which she was ultimately dismissed.

■ Van Hooser also seeks to be reinstated to her former position as a classroom teacher because of various acts of the school board, which she asserts violate the Teacher Tenure Act, T.C.A. §§ 49–5–501 et seq. She insists that the later acts of the board preceding and including the May 1985 hearing cannot cure the board's earlier violations of the Act.

The procedures to be followed in considering the potential dismissal of a teacher are set forth at T.C.A. § 49–5–511(a), which, in pertinent part, provides:

(4) When charges are made to the board of education against a teacher, charging the teacher with offenses which would justify dismissal of the teacher under the terms of this part, the charges shall be made in writing, specifically stating the offenses which are charged, and shall be signed by the party or parties making the charges.

(5) If in the opinion of the board, charges are of such nature as to warrant the dismissal of the teacher, the superintendent shall give the teacher a written notice of this decision, together with a copy of the charges against him, and a copy of a form which shall be provided by the state commissioner of education advising the teacher as to his legal duties, rights, and recourse under the terms of this part.

After receiving notice of charges under the above statute, a teacher may seek a hearing before the school board pursuant to T.C.A. § 49–5–512. The teacher must notify the superintendent within 30 days of receipt of the notice of the teacher's intention to seek this hearing. The teacher may be represented by an attorney and may present witnesses, evidence, and argument to support his or her contentions. The school board must make a decision within 10 days and immediately give the teacher notice.

We hold that Van Hooser was afforded the appropriate procedures as set forth in the Teacher Tenure Act. The school board's minutes of the March 28 meeting reflect that Galligan addressed the board, explained the case to them, and read the charges against Van Hooser. The board voted to give Van Hooser notice of the charges against her because they were serious enough to warrant dismissal, suspension or probation. Written notice, dated March 29, 1985, was provided to Van Hooser. On May 28–30, 1985, Van Hooser was afforded the hearing provided by statute, and, by letter dated June 7, 1985, the board informed her that she was dismissed, based on the board's determination that she had committed the acts with which she was charged.

We are not unsympathetic to Van Hooser's concerns that the school board had predetermined her case before any formal charges were ever filed against her. These are valid concerns in a school system where, in the course of their daily duties, school board members are privy to information about cases that may ultimately reach them in an official proceeding to seek the dismissal of a teacher. These concerns, however, do not justify Van Hooser's reinstatement. To hold otherwise would mean that the school board could never initiate dismissal proceedings against her, regardless of how meritorious the charges might be, because of prior ill-conceived actions.

We addressed this same concern in *Cooper*. There, we quoted *Potts v. Gibson*, 225 Tenn 321, 323, 469 S.W.2d 130, 135 (1971), in which the Court noted:

"It is inevitable that members of a school board should form an opinion, good or bad, of teachers and especially school principals within the system. And by reason of their official duties the members may possess valuable information either for or against individual members of the teaching and executive staff and consequently can offer valuable testimony at a disciplinary hearing before the board. Yet, the law makes no provision for a hearing before another tribunal. Much of the mischief which could result from the system is obviated by the right to a trial *de novo* conferred by [this statute]."

As we held in *Cooper*, any danger of arbitrariness, capriciousness, or bias is cured when, in the hearing *de novo*, the trial court readjudicates the matter in a neutral forum.

Accordingly, we remand this case to the trial court for further clarification and, if necessary, review of the record as previously described. Costs of appeal are assessed equally.

DROWOTA, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.

## OPINION ON PETITION TO REHEAR

PER CURIAM.

The appellant, Marilyn Van Hooser, has filed a petition to rehear, alleging that the court's opinion "overlooks material facts and conflicts with prevailing law." After a careful review of the petition, we find no basis for this assertion, and we therefore decline to order a rehearing.

We do agree, however, that one point in our opinion could benefit from further discussion. We thus offer the following observations in order to clarify our holding that the plaintiff is not entitled to back pay for the period of her suspension in the spring of 1983.

We originally concluded that her temporary employment the following fall as a librarian was not a "reinstatement" for purposes of T.C.A. § 49–5–511. That statute governs the "dismissal or suspension of teachers generally," and in subsection (a), it provides:

(1) No teacher shall be dismissed or suspended except as provided in this part.

(2) The causes for which a teacher may be dismissed are as follows: incompetence, inefficiency, neglect of duty, unprofessional conduct and insubordination. . . .

(3) A superintendent may suspend a teacher at any time that may seem necessary, pending investigation or final disposition of a case before the board or an appeal. If the teacher is *vindicated or reinstated*, he shall be paid the full salary for the period during which he was suspended (emphasis added).

Of course, there is no possible way to argue that the teacher in this case was "vindicated." Indeed, she was ultimately dismissed for the very reason that she was originally suspended. We found, furthermore, that she could not be said to have been "reinstated", because that term "implies restoration to a position from which a person has been removed." We pointed out that rather than being restored to her status as a classroom teacher, Van Hooser was "moved to a position where she had less student contact and less opportunity to engage in the type of conduct for which she was suspended."

The plaintiff takes issue with our conclusion in this regard, arguing that to limit "reinstatement" to restoration to the same position previously held by the suspended teacher conflicts with this court's holdings in a number of other teacher tenure cases, namely *White v. Banks*, 614 S.W.2d 331 (Tenn.1981); *Warren v. Polk County Board of Education*, 613 S.W.2d 222 (Tenn.1981); *McKenna v. Sumner County Board of Education*, 574 S.W.2d 527 (Tenn.1978); *Mitchell v. Garrett*, 510 S.W.2d 894 (Tenn.1974); *State ex rel. Pemberton v. Wilson*, 481 S.W.2d 760 (Tenn.1972); and *State v. Yoakum*, 201 Tenn. 180, 297 S.W.2d 635 (Tenn.1956). As the plaintiff correctly notes, these cases stand for the proposition that the teacher tenure act does not guarantee continuity of employment in a particular assignment or school. What the plaintiff fails to note is that all of them involve interpretation of T.C.A. § 49–5–510, which governs the right of the superintendent to makes transfers within the school system, and that they resulted from claims by the individual teachers that their particular transfers were improper in some respect. None of the cited cases involves the issue of back pay under the "vindication or reinstatement" clause of § 49–5–511. We find that for this reason, they have little relevance to the specific issue before us: whether the plaintiff was "vindicated or reinstated" within the meaning of § 49–5–511(a)(3) so that she is entitled to back pay during the period of her suspension.

The plaintiff argues that because the term "vindicated or reinstated" is phrased in the disjunctive rather than the conjunctive, satisfaction of either is enough to establish entitlement. But just as "vindication" is not a technical legal term, neither is "reinstatement." Both must be understood within the context of the statute.

To vindicate is "to clear of accusation, blame, suspicion, or doubt with supporting arguments or proof" or "to justify, espe-

cially in light of later developments."[1] The term carries with it the implication of exoneration. To reinstate means "to restore to a previous condition or position,"[2] "to put back or establish again, [as] to reinstate the ousted chairman."[3] Admittedly, the term "reinstate" does not necessarily carry the same implication of exculpation as does the term "vindicate." However, when viewed in context, that is, in terms of a finding by a board of education that the superintendent's act of suspension is not warranted and that the teacher should be restored to her or his previous position, the word reinstatement is clearly a term of art. It implies that the teacher has either been exonerated, or if not exonerated, at least excused of the conduct that led to the suspension, *i.e.*, either that there was no basis for the suspension after all, or that there were extenuating circumstances in mitigation. In either case the teacher, having been thus restored, is entitled to the pay that would have been forthcoming had the suspension never occurred.

The plaintiff insists that the legislature's use of the disjunctive "or" has controlling significance here. We disagree. The use of the disjunctive in subsection (a)(3) is obviously necessary to cover a situation where a suspended teacher does not wish, for one reason or another, to be reinstated to his or her former position. It may be, for example, that the suspended teacher has since secured another position in a different school district or is pursuing a different career. Such a teacher (or ex-teacher) may nevertheless wish to be "vindicated" by the board and thus collect back pay for the period of suspension. The point is that in the context of subsection (a)(3), use of the disjunctive does not mean that "vindication" and "reinstatement" are mutually exclusive terms.

Given this interpretation of T.C.A. § 49–5–511, it is clear that the plaintiff is not entitled to the back pay she now claims. Following her suspension, she was permitted to work in the library under the assumption that her dispute with the superintendent and the board was about to be resolved. It was not resolved, however, principally because of her failure to endorse the conditions of settlement. Neither the superintendent nor the board had any thought of returning the plaintiff to the classroom until she sought professional counselling to overcome the obvious psychological deficiencies she had displayed in physically abusing some of her students. The decision to let her fill an interim position in the school library was a matter of largess and not "reinstatement" as that term is used in the statute on suspension and dismissal. Ultimately, the plaintiff failed to accept the settlement and was discharged, based on the original accusation of wrongdoing.

In finding that the facts of this case do not constitute "reinstatement," we do not hold that in order to be reinstated for purposes of subsection (a)(3), a teacher must be placed back in exactly the same position she had prior to suspension. Often this will not be possible because of the passage of time and because of administrative transfers and other personnel adjustments occasioned by the suspension itself. What is contemplated, in our judgment, is a determination by the board that suspension was unwarranted and that the teacher should be restored, that is, made whole in terms of back pay, as well as employment.

There are no reported Tennessee cases undertaking to construe the terminology "vindicated or reinstated" as it is used in T.C.A. § 49–5–511(a)(3). In *Jones v. Brown*, 727 S.W.2d 497 (Tenn.1987), we held that a tenured teacher who was popularly elected to the office of superintendent and then defeated for reelection had retained his tenure rights during his term as superintendent and that he was therefore entitled to reinstatement as a teacher and back pay. But we specifically noted in that case that "no allegation of misconduct on the part of Plaintiff ha[d] ever been made."

---

**1.** American Heritage Dictionary of the English Language, 1430 (1975).

**2.** Id. 1097.

**3.** Random House Dictionary of the English Language 1210 (Unabridged Ed.1967).

*Id.* at 498. In *Jones* and later in *Bates v. Deal*, 728 S.W.2d 326 (Tenn.1987), we further held that once entitlement to back pay is established under T.C.A. § 49–5–511, an offset for monies earned from other sources during the period of suspension is not permitted by statute. Neither of these cases is relevant to the construction of § 49–5–511(a)(3) under the facts before us in the instant case, nor are they inconsistent with our interpretation of that provision.

Because we find no basis upon which to alter our decision that the plaintiff is not entitled to back pay, we decline to grant the petition to rehear.