# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### May 12, 2014 Session

## TINA WILDER v. UNION COUNTY BOARD OF EDUCATION

**Appeal from the Chancery Court for Union County**
**No. 6478      Andrew Tillman, Chancellor**

---

**No. E2013-02459-COA-R3-CV - Filed June 16, 2014**

---

This appeal arises from the dismissal of a tenured teacher. The Union County Board of Education ("the Board") dismissed Tina Wilder ("Wilder") following an incident involving underage drinking at Wilder's lake cabin. Wilder, contesting her dismissal, filed a petition for writ of certiorari in the Chancery Court for Union County ("the Trial Court"). The Trial Court concluded that the evidence sustained Wilder's dismissal. Wilder raises several issues on appeal. We hold, *inter alia*, that Wilder was afforded due process, that the Trial Court applied the correct standard of review, and that the evidence supported the Trial Court's decision. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;
Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

Richard L. Colbert and Courtney L. Wilbert, Nashville, Tennessee, for the appellant, Tina Wilder.

Janet Strevel Hayes and Chris W. McCarty, Knoxville, Tennessee, for the appellee, Union County Board of Education.

# OPINION

## Background

Wilder, then an experienced Union County teacher, hosted an after-prom party for a group of young people at her lake cabin on the night of May 12, 2012, or in the early morning hours of May 13, 2012. Acting on a tip that underage drinking would occur at the party, law enforcement officers soon arrived and the party abruptly ended. Several individuals were arrested for underage drinking. Wilder was charged with contributing to the delinquency of minors and allowing underage consumption of alcohol on her premises. Wilder eventually pled guilty to the latter charge.

Dr. James Carter ("Carter"), then the temporary Director of Schools, placed Wilder on administrative leave in the aftermath of the incident. In July 2012, Carter wrote Wilder to inform her that her dismissal was now being sought. Wilder had been employed by the Board since around 1999. Carter outlined the charges against Wilder:

> Please be further advised that pursuant to Tenn. Code Ann. § 49-5-511 you are charged with unprofessional conduct also known as conduct unbecoming to a member of the teaching profession, namely, improper use of intoxicants, which justify dismissal, that is, allowing underage adults to consume alcohol on your property and for contributing to the delinquency of a minor, and disregard of the teacher code of ethics, all of which occurred on or about May 12, 2012 and/or May 13, 2012, as described in the attached Affidavit of Complaint signed by Deputy J. Sharp.

In August 2012, Carter notified Wilder that he had presented the charges to the Board, which voted that the charges warranted Wilder's dismissal. Because Wilder was tenured, the Teacher Tenure Act codified at Tenn. Code Ann. § 49-5-501, *et seq.* applied in this case. Carter selected attorney Pamela Reeves ("the Hearing Officer") as an impartial hearing officer to conduct an evidentiary hearing on the charges. The Hearing Officer conducted a hearing in the matter in November 2012.

Deputy Jeff Sharp ("Sharp"), a law enforcement officer who had been on the scene at the after-prom party, testified at the hearing. Acting on a tip that Wilder would be hosting an underage drinking party, Sharp parked near Wilder's cabin to observe. Several carloads of young people drove toward Wilder's cabin. Sharp called for backup. No more than half an hour elapsed between the time the young people arrived and when the officers moved in. Surveying the scene, Sharp saw Wilder's vehicle parked near the cabin with the vehicle's radio blaring. In the vicinity, a bonfire had been built. As Sharp and the other

officers arrived, young people fled in all directions. All in all, around 27 young people were found on the premises. Several individuals were arrested in the melee, including some on charges of underage consumption. Sharp walked into the cabin, a place he described as a "[s]mall, small residence," and found Wilder sitting on the couch by her friend. Sharp stated that he smelled alcohol on both.

Sharp testified to what was discovered around and in the cabin, and photos of the scene were introduced as exhibits. A cooler filled with beer had been placed outside the cabin. Empty and full bottles of alcoholic beverages were strewn about both inside and outside the cabin. A garbage can inside was full of discarded alcoholic beverage containers. All in all, officers found dozens of alcoholic beverages on the premises, including 54 12 oz. bottles of Platinum Bud Lite. Officers also found six young individuals hiding in a back bedroom in the cabin. A bag containing car keys that fit vehicles parked outside the cabin also was discovered.

Wilder presented a different view of the party in her testimony. According to Wilder, this was a party with strict rules and the young people had disobeyed her instructions not to drink. Wilder also stated that she did not know that so many young people would attend. Shortly after midnight, Wilder's 15-year-old daughter called and told her that the individuals were en route to the cabin. As the party got underway, Wilder remained indoors and watched a movie. Wilder testified that she was not aware that underage drinking was taking place. However, testifying about why the young people ran when the officers arrived, Wilder stated: "I knew that there was alcohol, too. So I figured that they were running to try to save their hind ends." Wilder denied collecting car keys from anyone at the party.

Additional testimony was heard. One witness described seeing "a mass quantity of alcohol" outside the cabin. Carter, the school official, testified that Wilder might have misled him about the party in a meeting after the incident as Wilder did not tell him about the bag of car keys or the presence of alcohol inside the cabin. Evidence also was presented related to Union County's previous efforts to crack down on underage drinking.

The Hearing Officer made her findings. Among other things, the Hearing Officer found that underage drinking had occurred on Wilder's premises. According to the Hearing Officer, Wilder had exercised extremely poor judgment in failing to adequately supervise the young people at the party. The Hearing Officer, however, did not find that dismissal was an appropriate discipline. Instead, the Hearing Officer found a 30-day suspension without pay appropriate. The Hearing Officer noted Wilder's otherwise exemplary service record as a teacher. The Hearing Officer also found no proof that Wilder knew about the underage drinking at the party.

In December 2012, the new Director of Schools appealed the Hearing Officer's decision to the Board. An appeal hearing took place in February 2013. Wilder was represented by counsel at the hearing. After some questions and the two sides detailing their case, the Board voted to revise Wilder's penalty to dismissal. Continuing to pursue her avenues of appeal under the Teacher Tenure Act, Wilder filed a petition for writ of certiorari against the Board in the Trial Court.

The Trial Court heard arguments from both parties in September 2013. In October 2013, the Trial Court entered its findings of fact and conclusions of law. The Trial Court sustained the decision to dismiss Wilder for unprofessional conduct and dismissed with prejudice Wilder's writ of certiorari. In its oral findings, which were incorporated into its final order, the Trial Court found:

Okay, this matter of Wilder versus Union County Board of Education is before the Court for review of an administrative determination wherein Ms. Wilder was released from her employment for, among other things, allowing underage adults to consume alcohol on your property. That was specifically addressed in the letter, and she was told that it would amount to unprofessional or, in the Board's eyes, amounted to unprofessional conduct.

And the Court concludes that that is ultimately the reason that she was discharged, and the Court finds that the record supports that by a preponderance of the evidence. Among - - and I will not give you an exhaustive list of the reasons - - but the Officer testified that when he entered the residence, that Ms. Wilder was not, in fact, asleep, she was sitting to the left of the door, and she didn't appear to be asleep or groggy. And in fact, she and another individual had the smell, some smell of alcohol about them.

There was found at the residence a cooler that was her cooler that had apparently six to twelve, just looking at the photographs, I reviewed the photographic exhibits, it looked to have six to ten beers in there. There were I guess approximately twelve six-packs of different types of alcoholic beverages all there I think in the vicinity of the cooler, I'm not sure where they were all located then. At least in the photographic exhibit there's a pretty good, almost half a pickup load it looks to me like.

There were six children, or kids I say, six underage individuals in a bedroom, they were told to go up there and to hide and not say a word. There was a bag of keys taken up, which the Court believes is evidence that the

-4-

property owner where these were taken up had some indication that there was going to be drinking.

And in fact, the Court does place considerable weight on the fact that she did, in fact, plead guilty under oath to the charge of knowingly allowing, or to a charge as a property owner of allowing consumption on her premises. And part of that charge of the statute is that she knowingly allowed that. So, regardless of judicial estoppel and where we go on that, she, in fact, pled guilty under oath to that charge.

Did I mention the pictures of trashcans full of empty beers there in the residence, in apparently the kitchen inside the residence there were open bottles of vodka and other liquor, looked like rum, I don't know what all hard liquor. And this all is in the context of a school, a school in an area that has experienced the problem of underage drinking, and has attempted, before this ever happened, to take a stance on and address that problem.

So, those would be the Court's findings, the Court concludes that the evidence sustains the discharge.

Wilder filed an appeal to this Court.

## Discussion

We restate the issues raised on appeal as follows: 1) whether Wilder was afforded due process; 2) whether the Trial Court applied the correct standard of review; and, 3) whether the evidence preponderates against the Trial Court's decision.

This Court has discussed the standard of review in cases involving tenured teachers appealing under the Teacher Tenure Act:

The judicial remedy afforded a tenured teacher is established and governed by Tenn. Code Ann. § 49-5-513(g). It constitutes a statutory writ of certiorari, to be distinguished from a common law writ. *See Enochs v. Nerren*, 949 S.W.2d 686, 688 (Tenn. Ct. App. 1996); *see also Cooper v. Williamson County Bd. of Educ.*, 746 S.W.2d 176 (Tenn. 1987). A common law writ of certiorari is generally limited to a determination of whether the board acted within its jurisdiction, or acted arbitrarily, capriciously, or illegally. *See Van Hooser v. Warren County Bd. of Educ.*, 807 S.W.2d 230, 236 (Tenn. 1991) (citing *Cooper*, 746 S.W.2d at 179). That is not the case here for the statutory

writ of certiorari afforded a tenured teacher under Tenn. Code Ann. § 49-5-513(g) is not limited to a determination of whether the board acted within its jurisdiction, or acted arbitrarily, capriciously, or illegally. *Van Hooser*, 807 S.W.2d at 236 (citing *Cooper*, 746 S.W.2d at 179). "[T]he review contemplated by Tennessee Code Annotated section 49-5-513 is a *de novo* review." *Windsor v. DeKalb County Bd. of Educ.*, No. M2002-00954-COA-R3-CY, 2004 WL 875263, at *4 (Tenn. Ct. App. April 22, 2004).

The judicial remedy afforded a teacher under the Act expressly provides that the "cause shall stand for trial" in the Chancery Court, Tenn. Code Ann. § 49-5-513(g), and the Chancellor shall reduce the Chancellor's findings of fact and conclusions of law to writing. Tenn. Code Ann. § 49-5-513(h); *see Windsor*, 2004 WL 875263, at *4. The judicial review of the board's decision is limited to the written record of the hearing before the board, and any evidence or exhibits submitted at such hearing; however, additional evidence or testimony may be admitted "to establish arbitrary or capricious action or violation of statutory or constitutional rights by the board." Tenn. Code Ann. § 49-5-513(g).

Appeal from the Chancellor's decision to this Court "shall be heard on the transcript of the record from the chancery court." Tenn. Code Ann. § 49-5-513(I). *De novo* review in the Chancery Court under Tenn. Code Ann. § 49-5-513(g) differs from the *de novo* review this Court applies under Tenn. R. App. P. 13(d). *See Enochs*, 949 S.W.2d at 688 n. 4; *see also Cooper*, 746 S.W.2d at 179 n. 3. Although the Chancery Court does not attach a presumption of correctness to a school board's findings of fact, nor is it confined to deciding whether the evidence preponderates in favor of the school board's determination, *Enochs*, 949 S.W.2d at 688 n. 4 (citing *Cooper*, 746 S.W.2d at 181-82), we review the chancellor's findings of fact accompanied by a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Enochs*, 949 S.W.2d at 688 n. 4 (citing *Williams v. Pittard*, 604 S.W.2d 845, 846 (Tenn. 1980); *Cooper*, 746 S.W.2d at 182 n. 6).

*Lee v. Franklin Special Sch. Dist. Bd. of Educ.*, 237 S.W.3d 322, 328-29 (Tenn. Ct. App. 2007) (footnotes omitted).

Tenn. Code Ann. § 49-5-511(a)(2) provides that teachers may be dismissed or suspended for incompetence, inefficiency, neglect of duty, unprofessional conduct, or insubordination. As relevant to this appeal, "[c]onduct unbecoming to a member of the teaching profession" includes but is not limited to the following:

(A) Immorality;

(B) Conviction of a felony or a crime involving moral turpitude;

(C) Dishonesty, unreliability, continued willful failure or refusal to pay one's just and honest debts;

(D) Disregard of the teacher code of ethics in part 10 of this chapter, in such manner as to make one obnoxious as a member of the profession; or

(E) Improper use of narcotics or intoxicants; . . . .

Tenn. Code Ann. § 49-5-501(3) (2013).

We first address whether Wilder was afforded due process. Wilder alleges that her due process rights were violated by certain claimed deficiencies in the proceedings below. First, Wilder argues that the allowance of an appeal by the director from the decision of an impartial hearing officer chosen by the director calls into question the fairness of that procedure. Tenn. Code Ann. § 49-5-512(c) allows either party to appeal the decision of an impartial hearing officer. We fail to see how it is unfair for a director to appeal the decision of the impartial hearing officer he or she chose. Such an appeal shows a disagreement by the director with the hearing officer, which, if anything, shows there was no bias in the director's picking of a clearly impartial hearing officer. As the hearing officer must be impartial, something clearly not in question here, we see nothing unfair or improper in our General Assembly allowing either party to appeal the decision of the impartial hearing officer. Wilder's argument that due process requires that only the teacher be allowed to appeal the decision of an *impartial* hearing officer is without merit.

Wilder also argues that it was inappropriate that the attorney who represented the director later represented the Board in this matter as this allegedly casts doubt on the impartiality of the Board. It appears that Wilder raises this issue for the first time on appeal. Even if Wilder properly raised the issue, it appears from the record that both sides had an equal opportunity to address the Board. The Board was presented with arguments and rendered its decision. Though Wilder decries what she describes on appeal as a cursory approach by the Board in attending to this matter, the Board's disposition of this matter was neither arbitrary nor capricious. Also of significance to Wilder's due process issue is that what is on appeal in this Court is not the decision of the Board but rather the *de novo* decision of the Trial Court.

Wilder has received several levels of review in this matter, including a *de novo* review by the Trial Court and now an appeal in this court. Respectfully, while Wilder understandably opposes her dismissal, she has had ample opportunity to make her case. We hold that none of the alleged deficiencies raised on appeal by Wilder rise to the level of a due process violation.

We next address whether the Trial Court applied the correct standard of review. Under applicable law, the Trial Court was required to conduct a *de novo* review of Wilder's case. According to Wilder, the Trial Court failed to conduct a true *de novo* review under the Teacher Tenure Act because it improperly deferred to the Board's decision. As evidence, Wilder points to, among other things, the Trial Court's passing reference at one point in its findings to "the Board's eyes." Wilder also argues that the Trial Court improperly deferred to the Board by failing to specifically consider whether dismissal was warranted.

As laid out above, the Trial Court made multiple detailed findings. The Trial Court's findings logically and independently support its determination that Wilder should be dismissed on the basis of unprofessional conduct. The Trial Court's reference to the Board was not integral to the Trial Court's analysis at all. A trial court's *de novo* review of a board's decision under the Teacher Tenure Act simply means an independent consideration, not that the outcome necessarily will be different. From our review of the entire record, we conclude that the Trial Court did, in fact, conduct an independent *de novo* consideration of the written record as required. We affirm the Trial Court on this issue.

The final issue we address is whether the evidence preponderates against the Trial Court's decision. On appeal, Wilder contends that "[t]he most that can be said from this evidence is that Ms. Wilder was fired because, in a fifteen-to-twenty minute span, she did not realize that uninvited young adults with alcohol were roaming about her property outside in the dark and require them to leave." This description of the party, however, is not supported by the record. The Trial Court made a number of findings of fact, including, among others, the following: photographic evidence of an "almost half a pickup load" of alcohol; a bag of keys taken up; and, a garbage can full of alcoholic beverages inside the residence. The evidence in the record does not preponderate against these findings of the Trial Court. These facts combine to establish that Wilder knew about the underage drinking at the after-prom party. Alcohol was abundant in and around the cabin, and someone had the foresight to collect car keys from the young people. Perhaps the most striking undisputed fact is Wilder's guilty plea to knowingly allowing underage persons to drink alcohol on her premises. Wilder argues on appeal that she only entered the plea on the advice of her lawyer in a bid to save her job, but that does not alter the fact that she pled guilty under oath to the offense of allowing underage persons to drink alcohol on her premises. Wilder does not assert that her plea was coerced or otherwise invalid. The evidence supports the Trial Court's finding that Wilder knowingly allowed underage consumption of alcohol at the party on her property.

The record shows that Union County has waged a campaign against underage drinking in response to statistics showing that a high percentage of underage students in that area have consumed alcohol. Apart from any special awareness campaign, Tennessee law

-8-

prohibits underage drinking. By knowingly hosting underage drinkers, Wilder both contravened Tennessee law and her school system's efforts to curb underage drinking. Wilder's hosting a party where she knowingly allowed underage drinking on her premises falls squarely into the category of unprofessional conduct for a school teacher under the Teacher Tenure Act. We find no error in the Trial Court's decision that Wilder's dismissal was warranted under these facts. We affirm the judgment of the Trial Court in its entirety.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Tina Wilder, and her surety, if any.

_____
D. MICHAEL SWINEY, JUDGE