**Frances Marie WILLIAMS, Plaintiff–Appellee,**

v.

**Dr. Homer PITTARD, Allen Watts, Ed Jordan, Jr., Mrs. Lydia Glanton, Dr. Ammon Williamson, Dr. William Strang, and Fred Hobbs, in their Official Capacities as Members of the Rutherford County Board of Education; The Rutherford County Board of Education; and Elam Carlton, Superintendent of Rutherford County Schools, Defendants–Appellants.**

Supreme Court of Tennessee.

Sept. 8, 1980.

Charles Hampton White, Nashville, for plaintiff–appellee.

William T. Sellers, Murfreesboro, for defendants–appellants.

## OPINION

BROCK, Chief Justice.

This action involves the dismissal of Frances Marie Williams, a teacher with permanent tenure, who had taught kindergarten in the Rutherford County School System for six years. Charges of inefficiency and insubordination were brought against Mrs. Williams by Mr. David Young, the principal at Rockvale Elementary School. After a statutory hearing the Rutherford County Board of Education voted to support the principal's charges; however, in a *de novo* hearing before the Rutherford County Chancery Court it was held that the Board hearing was a nullity because Mrs. Williams was denied "due process." The Chancellor also found that the evidence offered by the Board was insufficient to sustain the charges of inefficiency and insubordination and he, therefore, ordered the Board to reinstate Mrs. Williams with backpay.

■ The Board of Education has appealed to this Court asserting direct appeal jurisdiction pursuant to T.C.A. § 49–1417. Our review of the Chancellor's decision is *de novo*, accompanied by a presumption of the correctness of his decree, unless the preponderance of the evidence is otherwise. T.C.A. § 27–304; *Potts v. Gibson*, 225 Tenn. 321, 469 S.W.2d 130 (1971). After thorough consideration, we find that the preponderance of the evidence supports the Chancellor's decision and we, therefore, affirm his decree.

The proof established at the chancery hearing reveals that Mrs. Williams began teaching kindergarten at Rockvale Elementary in 1971 and was dismissed at the end of the 1977–1978 school year. During the first five years Mrs. Williams taught at Rockvale, her principal was Mr. Elam Carlton, the present Superintendent of the Rutherford County Schools. Mr. Carlton recommended Mrs. Williams for permanent tenure during the 1974–1975 school year and she was approved for such status by the Board.

In October of 1977, David Young became the principal at Rockvale after Mr. Carlton became Superintendent of Schools. For the ten years prior to his arrival Mr. Young was the assistant principal at a junior high school in Smyrna where he also taught physical education. Mr. Young admitted that his experience at Rockvale was his first contact with kindergarten teachers or classes and that he had no special training in the kindergarten field.

As soon as Mr. Young arrived he made it clear to the Rockvale teachers that their coming to work on time was very important to him. School began at 8:00 a. m. and pursuant to Board policy he informed the teachers that they should be at work fifteen minutes early at 7:45 a. m. From 7:45 until 7:55, at which latter time the bell for school rang, all the children were in the auditorium under the supervision of Mr. Young and an assistant. During this ten minute period several teachers testified that they had no duties and that the time was normally used for socializing.

Mr. Young soon began to notice that Mrs. Williams was not arriving at work promptly at 7:45. After visiting her classroom on several occasions, he was also of the opinion that she needed to exercise greater control over her students. On October 25, 1977, Mr. Young advised Mrs. Williams that he was not pleased with her lack of classroom discipline and her tardiness.

With regard to the tardiness problem Mr. Young testified from his personal records that Mrs. Williams was late 19 times between the time of his arrival and the Christmas vacation. However, Mrs. Williams testified that during these months she was never as late as 8:00 a. m. except on one occasion when she made an early trip to Nashville for a school purpose.

In January of 1978, Mr. Young decided to establish a sign-in system whereby the teachers were required to sign their names and the time of their arrival. Between January and June of 1978 Mrs. Williams signed in past 7:45 on 22 occasions. Out of these 22 times she was usually one to three minutes late and only on two occasions did she sign in as late as 8:00 a. m. Mrs. Williams explained her tardiness by testifying that she, unlike most of the other teachers, parked at the back of the school near her classroom. She entered the building through a rear door, turned on her classroom lights, set the thermostat, put down her school materials, and then proceeded to the auditorium where she signed in.

With regard to the classroom discipline problem, Mr. Young testified that he visited Mrs. Williams' room for a few minutes three to four times a week and he felt that most of the time there was only free play taking place rather than teaching. Mr. Young contacted Mrs. Margaret Butler, a supervisor of elementary education, who paid Mrs. Williams approximately seven visits during the course of the 1977–1978 school year.

Mrs. Butler was of the opinion that Mrs. Williams was "very capable," "very knowledgeable of kindergarten work," but needed a more "structured program." She stated that Mrs. Williams' students became so loud on occasion that they disturbed other classes. Mrs. Butler felt that Mrs. Williams had "a little problem with calming the kids down" and that this situation could be improved by more structured activities. Mrs. Butler also testified that she visited Mrs. Williams when the latter was under the supervision of Mr. Carlton, that Mrs. Williams conducted her class in the same manner under Mr. Young as she had under Mr. Carlton, and that she (Butler) had never recommended that Mrs. Williams be dismissed.

Mr. Carlton testified that while he was principal he established no formal sign–in procedure for teachers to report to work. He further stated that his overall experience with Mrs. Williams was satisfactory but that she had had some problems with tardiness and classroom discipline.

On January 3, 1978, Mr. Young had another conference with Mrs. Williams. She was given a copy of an evaluation form which pointed up her shortcomings in the opinion of Mr. Young. According to Mr. Young, at the end of this conference he instructed Mrs. Williams that she was going to have to make improvements and she responded, ". . . and if I don't?"

The January 3 conference was the last meeting between the parties until March 31, 1978, at which time Mr. Young advised Mrs. Williams that unless she resigned he would prefer charges against her with the Board of Education. Mrs. Williams signed a resignation letter which Mr. Young had already prepared. However, on the day of

the Board meeting, April 6, 1978, Mrs. Williams advised Superintendent Carlton that she withdrew this resignation. On that day the Board met but took no action with regard to Mrs. Williams.

On April 12, 1978, Mr. Young wrote to Carlton charging Mrs. Williams with inefficiency and insubordination based upon her alleged failure to maintain appropriate control of her class and her failure to consistently report to school by 7:45 a. m. On April 13, 1978, Mr. Carlton wrote to Mrs. Williams and advised her of her rights under the Tennessee Teachers' Tenure Act. One week later the Board voted to dismiss Mrs. Williams if the charges lodged against her were proven to be true. On the following day, April 21, 1978, Mrs. Williams was advised of this action and she immediately requested a hearing.

The hearing before the Board took place on May 25, 1978, and as it began the Chairman of the Board made the following statement:

"Now, charges have been made. They have been transmitted properly as far as we know–informed. And the purpose of this hearing is first to hear a refutive or rebuttal of the charges made against Mrs. Marie Williams, a kindergarten teacher at Rockvale School. So at this time the Board would like to hear from Mrs. Williams giving her version, her side of the story, and her explanation and refuting of the charges made against her."

Mrs. Williams' attorney objected to the proposed procedure because he felt that the Board should be required to go forward first with its proof against Mrs. Williams. He stated that "[c]harges have only been made in a letter and have not been made under oath. There has been no chance of cross–examination of the person making the charges." This objection was overruled and Mrs. Williams was required to testify first.

After Mrs. Williams testified she was allowed to call witnesses in her behalf. Mr. Young was then asked to make a statement and was cross–examined by counsel for Mrs. Williams.

Four days after the hearing Mrs. Williams was notified that the Board had voted to support Mr. Young's charges. Mrs. Williams served to the end of the 1977–1978 school year, but she has not been employed by the Rutherford County School System since June 3, 1978.

I

Initially, we address the question whether Mrs. Williams was afforded an adequate hearing before the Board of Education within the meaning of the Tennessee Teachers' Tenure Act.

T.C.A., § 49–1416, establishes the following notice and hearing rights of a tenure teacher:

"49–1416. *School board hearing.*—A teacher, having received notice of charges against her, may within thirty (30) days after receipt of notice, demand a hearing before the board, as follows:

"(1) The teacher shall give written notice to the superintendent of her request for a hearing.

"(2) The superintendent shall within five (5) days after receipt of request, indicate the place of such hearing and set a convenient date, which date shall not be later than thirty (30) days following receipt of notice demanding a hearing.

"(3) The teacher may appear at the hearing and plead his cause in person or by counsel.

"(4) The teacher may present witnesses, and have full opportunity to present his contentions and to support them with evidence and argument.

"(5) The chairman of the board conducting said hearing is hereby empowered to issue subpoena for witnesses to compel their attendance at hearings authorized under this section. All parties to the proceeding shall have the right to have subpoenas issued by the chairman of the board to compel the attendance of all witnesses deemed by such parties to be necessary, for a full and complete hearing. All witnesses shall be entitled to the witness fees and mileage provided by law

for legal witnesses, which fees and mileage shall be paid as a part of the costs of such proceeding. The costs of such proceeding shall be paid by the losing party.

"(6) The chairman of the board shall administer oaths to witnesses, who shall testify under oath.

"(7) On request of either party to the trial witnesses may be barred from the hearing except as they are called to testify. The hearing may be private at the request of the teacher or in the discretion of the board.

"(8) The board shall within ten (10) days decide what disposition to make of the case and shall immediately thereafter give the teacher written notice of its findings and decision.

\* \* \* "

As previously noted, the Board was of the opinion that the purpose of a hearing under this statute is to first hear a rebuttal of charges against the teacher. The Chancellor disagreed, stating that our civil as well as our criminal system is "permeated with the procedure that the person charged is innocent until proven guilty." Mrs. Williams argues through counsel that in effect the Board's procedure shifts "the burden upon Williams to go forward and to exculpate herself from the charges prior to hearing any of the evidence in support of them."

■ While the Tennessee Teachers' Tenure Act may not provide tenure teachers the full range of procedural safeguards that are mandated for criminal defendants by our state and federal constitutions, the Act does make it clear that, at a minimum, notice and a hearing are required. It has further been established that a tenure teacher is entitled to a "due process" hearing prior to deprivation of the significant property interest which a teacher obtains upon being granted tenure. *See, e. g., Sullivan v. Brown,* 544 F.2d 279, 284 (6th Cir. 1976). Of course, a "due process" hearing entails flexible standards which may require differing procedural safeguards according to the circumstances of individual cases. *Cafeteria and Restaurant Workers v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

Unquestionably, one who is deprived of a significant property interest is entitled to a due process hearing "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66 (1965). In the case at bar Mrs. Williams was provided a hearing at a meaningful time. However, when Mrs. Williams was required to testify first, it is argued that she was denied a hearing in a "meaningful manner" within the meaning of the due process clauses of the state and federal constitutions and within the meaning and legislative contemplation of T.C.A., § 49–1416.

■ Although very few courts have addressed this issue, it seems clear that regardless of the particular statutory scheme involved, a teacher with tenure cannot be required to prove his or her innocence or be required to show cause why he or she should be able to continue as a teacher. *In re Swink,* 132 Pa.Super. 107, 200 A. 200 (1938); *See also Mass v. Board of Education,* 39 Cal.Rptr. 739, 61 Cal.2d 612, 394 P.2d 579 (1964); *School District v. Thompson,* 121 Colo. 275, 214 P.2d 1020 (1950).

In *School District v. Thompson, supra,* the Colorado Supreme Court rejected a teacher's assertion that she was denied due process, the record indicating "that the hearing was conducted in the proper manner, with the initial duty of going forward placed upon the person preferring the charges." 121 Colo. at 281, 214 P.2d at 1023.

In *Thomas v. Ward,* 374 F.Supp. 206 (D.C. N.C.1973), reversed in part on other grounds, 529 F.2d 916 (4th Cir. 1975), a federal district court made the following comment:

"[T]he Court does not suggest that it condones or encourages a hearing where the public employee must first proceed. In a situation where no facts are in dispute, that type of hearing may be acceptable. In cases like the instant one in which there are disputed, critical facts, and opinion evidence, that type of procedure only serves to confuse matters and

waste time. Thus the better course of action calls for the school system to put on its evidence, so plaintiff can confront and cross–examine the witnesses, and then let the plaintiff proceed." 374 F.Supp. at 212–13, fn. 9.

Finally, in *Luther v. Board of Education*, 62 Mich.App. 32, 233 N.W.2d 173, 176 (1975), the Michigan Court of Appeals reached the following conclusion with regard to proceedings before the Michigan Tenure Commission:

"[A]ppellant contends that the commission erred in requiring him to proceed first in his hearing before them. We feel the better policy is to require the school board to first present its evidence. To do otherwise may shift the burden to the teacher to show error in the board's findings."

■ Considering the foregoing authorities and the policy of teacher tenure, we conclude that under the Tennessee Teachers' Tenure Act the proper procedure is to place the duty of first going forward upon the person preferring charges against a tenure teacher; the burden of proof being upon the party who prefers charges. However, because we find that the preponderance of the evidence supports the Chancellor's decree we do not deem it necessary to reach a constitutional holding with regard to this issue.

## II

■ The Board contends that the preponderance of the evidence adduced at the chancery hearing supports the charges of inefficiency and insubordination and that the Chancellor erred in reversing the Board's dismissal of Mrs. Williams. The case is close, but, upon balance, we disagree.

The charge of inefficiency was based upon Mr. Young's opinion that Mrs. Williams failed to maintain "adequate control" of her class. T.C.A. § 49–1401(8), defines inefficiency as "[b]eing below the standards of efficiency maintained by others currently employed by the board for similar work; habitually tardy, inaccurate, or wanting in effective performance of duties." As previ-

ously noted Mr. Young reached this conclusion based on visits to Mrs. Williams' classroom for a few minutes three to four times a week. Mr. Young had no prior exposure or training in the kindergarten field.

Mrs. Margaret Butler, a state supervisor, testified that in her opinion Mrs. Williams needed to change to a more structured program. However, Mrs. Butler admitted on cross–examination that a less structured program was an acceptable teaching approach and that, overall, Mrs. Williams had a very good readiness program which would adequately prepare her kindergarten students for first grade.

In light of the absence of any persuasive testimony that Mrs. Williams' performance was "below the standards of efficiency" maintained by other kindergarten teachers or that she was "wanting in effective performance of duties," we agree with the Chancellor that the evidence of inefficiency was insufficient to warrant Mrs. Williams' dismissal.

Mr. Young's charge of insubordination was based on T.C.A., § 49–1401(12)(a), which provides the following:

"(12) 'Insubordination' may consist of:

"(a) Refusal or continued failure to obey the school laws of Tennessee, or to comply with the rules and regulations of the board, or to carry out specific assignments made by the board, the superintendent or the principal, each acting within its own jurisdiction, when such rules, regulations and assignments are reasonable and not discriminatory."

As set out above the charge of insubordination was predicated on Mrs. Williams' failure to follow Board policy with regard to reporting to work. Without reiterating the number of times and the extent to which Mrs. Williams was late, we conclude that the Chancellor was correct in finding that her tardiness was insufficient to warrant her dismissal in light of the absence of duty during the ten minute period in which she was habitually arrived.

Accordingly, the decree of the Chancellor is affirmed, the case is remanded for any

proceedings which may be necessary, and the costs of appeal are taxed against the Rutherford County Board of Education.

FONES, COOPER and HARBISON, JJ., concur.