ALAN E. HIGHERS, Judge and HOLLY KIRBY LILLARD, Judge, concur.

**William George BALTRIP, Plaintiff–Appellant,**

v.

**Roy K. NORRIS, Superintendent of Claiborne County Schools, and The Claiborne County Board of Education, Defendants–Appellees.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Jan. 28, 2000.

Application for Permission to Appeal Denied by Supreme Court July 24, 2000.

Charles Hampton White, Rebecca L. Wells–Demaree, Cornelius & Collins, Nashville, TN, for appellant.

Dean B. Farmer, Keith L. Edmiston, Hodges, Doughty & Carson, Knoxville, TN, for appellees.

## OPINION

SUSANO, J.

The plaintiff, William George Baltrip ("Baltrip"), brought this action against Roy K. Norris ("Norris"), Superintendent of the Claiborne County Schools, and the Claiborne County Board of Education ("the Board") seeking reinstatement to his position as a tenured teacher in the Claiborne County School System pursuant to T.C.A. § 49–5–513.[1] The trial court grant-

---

1. T.C.A. § 49–5–513 (1996) provides, in perti-    nent part, as follows:

ed Norris and the Board summary judgment from which Baltrip appeals, raising two issues:

1. Did the trial court err in concluding that no genuine issue of material fact exists as to whether the Board acted arbitrarily and capriciously in terminating Baltrip after he pled guilty to a misdemeanor?

2. Did the trial court err in concluding that the Board did not violate the Open Meetings Act, T.C.A. § 8–44–101, *et seq.* (1993)?

## I.

Baltrip was first employed by the Board as a teacher in 1969. His employment with the Board was continuous from 1973 until his dismissal on October 10, 1996. During the 1994–95 school year, one of Baltrip's students, Jodie Reece ("Reece"), performed some clean-up work at a house that Baltrip was building.[2] On May 25, 1995, Baltrip invited Reece to view the completed house. When Reece arrived at the house in the early evening hours, only Reece and Baltrip were present. As Baltrip showed Reece the house, the two entered a bathroom, where Baltrip hugged Reece. Later that evening, Reece went to the Department of Human Services and filed a complaint against Baltrip, alleging that Baltrip had hugged her and tried to kiss her. Baltrip was charged with sexual battery on June 21, 1995. On June 26, 1995, Norris suspended Baltrip pending an investigation of the charge. At a preliminary hearing on September 22, 1995, the sexual battery charge was reduced to a charge of simple assault and Baltrip was

bound over to the grand jury. Thereafter, Baltrip was permitted to return to teaching. However, he was again suspended on December 6, 1995, when the grand jury returned an indictment charging Baltrip with sexual battery.

In April, 1996, Baltrip entered into a plea agreement with the District Attorney General pursuant to which he pled guilty to assault, a misdemeanor. Prior to his plea, Baltrip and his criminal defense attorney had met informally with Trent Williams ("Williams"), the Assistant Superintendent of the Claiborne County School System. Williams testified at the Board hearing that he told Baltrip that in the past the Board had not taken any action against a teacher for pleading guilty to a misdemeanor. David Stanifer, Baltrip's criminal defense attorney, testified that based upon this conversation with Williams, his understanding was that a misdemeanor conviction would have no effect on Baltrip's employment. Baltrip testified that his understanding of the conversation was as follows:

I talked with Mr. Williams about it. He said informally, so I'll say informally, also. But he indicated to me if I pleaded to the simple assault it's no more than a speeding ticket. It's got nothing to do with your teaching position.

After his guilty plea, Baltrip was allowed to resume teaching. Thereafter, Reece's mother, Juanita Honeycutt ("Honeycutt"), wrote several letters to Norris, protesting Baltrip's retention and demanding a hearing before the Board. After reviewing Honeycutt's complaints and a transcript of a statement Baltrip made to the Depart-

(a) A teacher under "permanent tenure" or "limited tenure" status who is dismissed or suspended by action of the board may petition for a writ of certiorari from the chancery court of the county where the teacher is employed.

\* \* \*

(g) The cause shall stand for trial and shall be heard and determined at the earliest practical date, as one having precedence over other litigation, except suits involving state, county or municipal revenue. The

review of the court shall be limited to the written record of the hearing before the board and any evidence or exhibits submitted at such hearing. Additional evidence or testimony shall not be admitted except as to establish arbitrary or capricious action or violation of statutory or constitutional rights by the board.

2. Baltrip built houses as an additional occupation.

ment of Human Services, Norris drafted charges against Baltrip, which charges state, in pertinent part, as follows:

UNPROFFESSIONAL [sic] CONDUCT/CONDUCT UNBECOMING A MEMBER OF THE TEACHING PROFESSION:

On April 3, 1996, William George Baltrip pled guilty to the offense of assault, a Class B Misdemeanor, as result of an incident on May 25, 1995, with a minor, female student taught by William George Baltrip.

\* \* \*

It was [sic] also appears the Tennessee Education Association, Code of Ethics was violated by failing to protect the student from harmful conditions, embarrassment and using a professional relationship with a student for private advantage.

Baltrip was suspended pending resolution of these charges. A hearing on the charges was held by the Board on October 7, 1996; however, the Board did not make a decision at that time. Three days later, the Board conducted a regularly scheduled meeting. During this meeting, the Board recessed and conferred with its counsel, Elizabeth Townsend ("Townsend"), to determine the forms of discipline available to the Board in Baltrip's case. After conferring with Townsend, the Board resumed its meeting in open session and voted five-to-one in favor of dismissing Baltrip from his tenured teacher position.

Baltrip filed a complaint in the trial court, alleging that the Board acted arbitrarily and capriciously in dismissing him when (1) he was not guilty of unprofessional conduct and (2) he was induced to plead guilty to assault by the representation made by the assistant superintendent that his guilty plea would not affect his job. Baltrip also alleged a violation of the Open Meetings Act.

Norris and the Board filed a motion for summary judgment asserting that there are no genuine issues of material fact. This motion was supported with a transcript of the Board's meetings on October 7 and 10, 1996; the depositions of Norris and the Board members; and a statement of undisputed facts. Baltrip filed a response to this motion; however, he did not support his response with any affidavits or additional evidence.

The trial court granted Norris and the Board summary judgment, finding (1) no arbitrary or capricious action and (2) no violation of the Open Meetings Act. This appeal followed.

## II.

Our standard of review on a grant of summary judgment is well settled. "Our inquiry involves purely a question of law; therefore, we review the record without a presumption of correctness to determine whether the absence of genuine issues of material facts entitle[s] the defendant to judgment as a matter of law." *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). The moving party—in this case, Norris and the Board—has the initial burden of producing competent, material evidence showing that there is no genuine issue as to any material fact. *See Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn.1993). This burden may be met by either affirmatively negating an essential element of the non-moving party's claim or by conclusively establishing an affirmative defense. *Id.* at 215 n. 5.

If the moving party successfully negates an essential element of a claim, the non-moving party must then establish that there are disputed material facts creating genuine issues that must be resolved by the trier of fact. *Id.* at 215. The nonmoving party cannot rely on his or her pleadings to overcome a properly-supported motion for summary judgment. Rule 56.06, Tenn.R.Civ.P.; *Robinson*, 952 S.W.2d at 426; *Byrd*, 847 S.W.2d at 215. The nonmoving party may contradict the factual predicate of the motion by presenting competent and admissible material evidence. *Robinson*, 952 S.W.2d at 426 n. 4; *Byrd*,

847 S.W.2d at 215 n. 6. In addition, the evidence must be viewed by the court in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of the nonmoving party. *Byrd,* 847 S.W.2d at 210–11. All facts supporting the nonmovant's position must be accepted as true. *Id.* at 212. It is only when the material facts are not in dispute and conclusively show that the movant is entitled to a judgment that a trial court is justified in depriving a claimant of his or her right to a plenary trial. In all other instances, a trial on the merits is necessary. Summary judgment "is clearly not designed to serve as a substitute for the trial of genuine and material factual matters." *Id.* at 210.

## III.

■ Baltrip argues that genuine issues of material fact exist as to whether the Board acted arbitrarily and capriciously. Baltrip first argues that there is a factual dispute as to whether he is guilty of unprofessional conduct. "Unprofessional conduct" has been defined as "conduct that violates the rules or the ethical code of a profession or that is unbecoming a member of a profession in good standing, or which indicates a teacher's unfitness to teach." *Morris v. Clarksville–Montgomery County Consol. Bd. of Educ.,* 867 S.W.2d 324, 329 (Tenn.Ct.App.1993) (citing 68 Am.Jur.2d *Schools* § 161 (1993)). There was material evidence before the Board from which the Board could reasonably conclude that Baltrip entered a plea of guilty to a charge arising out of an uninvited and unwelcomed touching, with sexual overtones, of one of his students. Such conduct cannot be reconciled with Baltrip's role as a teacher. Such an act clearly falls within the definition of unpro-

fessional conduct as set forth in *Morris.* Since there is material evidence of unprofessional conduct as charged by the Board, we cannot say that the Board acted in an arbitrary or capricious manner when it dismissed Baltrip. This issue is found adverse to Baltrip.

■ Baltrip also contends that a factual dispute exists regarding the "negotiations" that occurred between Baltrip and Williams prior to Baltrip's guilty plea. Although there was conflicting testimony presented to the Board as to the precise statements made by Williams to Baltrip, we do not find that his statements, whichever version is true, are material. By definition, a disputed fact is "material" when "it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd,* 847 S.W.2d at 215. It is undisputed that Williams had no authority to bind the Board to an agreement with respect to Baltrip's continued employment. Thus, any representations made by Williams regarding the effect of a misdemeanor conviction on his employment have no bearing on the issue of whether the Board acted in an arbitrary and capricious manner. We have reviewed the transcript, and do not find any evidence of an agreement, either written or oral, between the Board and Baltrip to the effect that his employment status would be unaffected by his guilty plea or by the underlying facts that led to his prosecution.

■ The record before us reflects, conclusively, that the Board did not act in an arbitrary or capricious manner when it terminated Baltrip's employment.[3]

## IV.

■ Baltrip contends that a factual dispute exists as to whether the Board violat-

---

**3.** In a footnote to the last sentence of the argument section of his brief dealing with the issue of the Board's alleged arbitrary and capricious action, Baltrip complains that a member of the Board, one Billy Turner, is a great uncle of Reece and, for this reason, should have recused himself from the hearing when asked to do so. He states that "[t]his

fact simply buttresses [his] claim that he was arbitrarily and capriciously dismissed." He alludes to the Tennessee Supreme Court case of *Williams v. Pittard,* 604 S.W.2d 845 (Tenn. 1980) for the proposition that "one who is deprived of a significant property interest is entitled to a due process hearing 'at a meaningful time and in a meaningful manner.' "

ed the Open Meetings Act ("the Act"). He contends that the Act was violated when the Board recessed to meet privately with attorney Townsend to discuss the Board's legal options. After that meeting, the Board reconvened and immediately voted to dismiss Baltrip. Baltrip contends that this vote is merely a "crystallization" of the secret deliberations of the Board. Baltrip supports his contention that private deliberations occurred in violation of the Act by the fact that the Board did not deliberate after reconvening in public session and before voting.

■ We must draw all *reasonable* inferences in Baltrip's favor, *see Byrd,* 847 S.W.2d at 210–11; however, reason does not dictate that we draw an inference of unlawful deliberations from the Board's lack of discussion before its vote to dismiss Baltrip. Baltrip cites no authority, and we are not aware of any, that requires the members of a public body to verbalize or discuss a matter prior to a vote in order to comply with the Act. Accordingly, we decline to infer from the lack of discussion between the Board members at the open session that deliberations were undertaken in the Board's private meeting with its attorney.

■ We must now determine whether the Board violated the Act by the mere fact that it met with Townsend in private. The Act provides that it is "the policy of this state that the formation of public policy and decisions is public business and shall not be conducted in secret." T.C.A. § 8–44–101(a) (1993). In *Smith County Educ. Ass'n v. Anderson,* 676 S.W.2d 328, 335 (Tenn.1984), the Supreme Court held

that the Act did not apply to discussions between a school board and its attorney concerning pending litigation. The Court noted that this is a "narrow exception" and would apply "only to those situations in which the public body is a named party in the lawsuit." *Id.* Further, the Court warned that

once any discussion, whatsoever, begins among the members of the public body regarding what action to take based upon advice from counsel, whether it be settlement or otherwise, such discussion shall be open to the public and failure to do so shall constitute a clear violation of the Open Meetings Act.

*Id.* at 334.

The Supreme Court further defined this "narrow exception" in *Van Hooser v. Warren County Bd. of Education,* 807 S.W.2d 230 (Tenn.1991). In that case, the school board retired during a meeting to discuss with its attorney the status of a teacher who was accused of paddling students. *Id.* at 233. The teacher argued that the Act was violated because no charges had been filed against her nor was any litigation pending when the meeting occurred. *Id.* at 237. The Court disagreed, finding that the Act is not violated by a closed meeting when there is "a pending controversy that [is] likely to result in litigation between the school district and [the teacher]." *Id.* However, the Court found that in this closed meeting the board members had discussed and assented to the proposed conditions by which the teacher would return to work. *Id.* Because the board had "made decisions or deliberated toward a decision" during the closed meeting, the Court found that the board had violated the Act. *Id.*

---

*Id.* at 849. (citing *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66 (1965)). The participation of Reece's great uncle has no bearing on the validity of the *substance* of the Board's action, *i.e.,* whether the action of the Board was arbitrary or capricious. Hence, we do not find that it "buttresses" Baltrip's position on the issue to which it is directed. Since the issue of *procedural* due process was not raised as a separate issue on appeal and since Bal-

trip cites no authority for the proposition that Mr. Turner's participation invalidates the Board's judgment, we will not consider this matter further. *See* Rule 13(b), T.R.A.P. ("Review generally will extend only to those issues presented for review."); *see also* Rule 27(a)(7), T.R.A.P. ("The brief of the appellant shall contain ... [a]n argument ... including the reasons why the contentions require appellate relief, with citations to the authorities ...").

We hold that the Board did not violate the Act in this case when it met with its attorney. When the Board met with its counsel, there was a "pending controversy that was likely to result in litigation," *i.e.,* a charge of unprofessional conduct had been lodged, and was then pending, against Baltrip. The depositions of the Board members show that during the meeting with Townsend, she advised them of three options in regard to Baltrip: (1) termination; (2) reinstatement; or (3) reinstatement with conditions. Every member of the Board testified by deposition that the meeting was limited to a discussion with Townsend about the Board's possible legal options and that no deliberation or decision-making occurred. Baltrip has produced no evidence to the contrary. Thus, we affirm the trial court's determination that the Act was not violated.

We find and hold that the trial court was correct in granting the defendants summary judgment.[4]

## V.

The judgment of the trial court is affirmed. Costs on appeal are assessed against the appellant. This case is remanded to the trial court for collection of costs assessed there, pursuant to applicable law.

HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., concur.

---

**4.** In the argument section of his brief pertaining to the issue of the violation of the Act, Baltrip states the following:

> The Board met in private with the attorney who was prosecuting the evidence on which she sought dismissal before the Board of Education. No one could seriously argue that a District Attorney General, prosecuting a criminal in a court of Tennessee, could meet with a jury to discuss the sentencing options prior to the jury rendering a verdict.

Baltrip does not raise this matter as an issue in the issues section of his brief; nor does he cite any authority suggesting that the dual role of the Board's attorney amounts to reversible error. In fact, there is authority suggesting to the contrary. *See, e.g ., Cochran v. Board of Educ.,* 815 S.W.2d 55, 60 (Mo.Ct.App.1991)(holding mere fact that school board's attorney actively participated in dismissal hearing did not render hearing unfair). In any event, since this matter has not been raised or briefed, we will not consider it. *See* Rules 13(b) and 27(a)(7), T.R.A.P.