IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 13, 2001 Session

# ARLON H. WAY, vs. JIM E. HALL, Superintendent of Cumberland County Schools and THE CUMBERLAND COUNTY BOARD OF EDUCATION

**Direct Appeal from the Chancery Court for Cumberland County**
**No. 8152-7-97      Hon. Vernon Neal, Judge**

**FILED MARCH 27, 2001**

**No. E2000-01458-COA-R3-CV**

---

Plaintiff was discharged as a teacher for unprofessional conduct, and on appeal to the Trial Court he was reinstated. The Trial Court found the school Board had acted arbitrarily and there was no material evidence to sustain the charge of unprofessional conduct. We reverse and reinstate the Board's decision.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Dean B. Farmer and Keith L. Edmiston, Knoxville, Tennessee, for Defendants-Appellants, Jim E. Hall, Superintendent of Cumberland County Schools, and the Cumberland County Board of Education.

Richard L. Colbert, Nashville, Tennessee, for Plaintiff-Appellee, Arlon H. Way.

## OPINION

Plaintiff, Arlon Way, a tenured teacher, was discharged by the Cumberland County School Board and the Superintendent of Schools, Jim E. Hall, defendants, for unprofessional conduct. Way appealed to the Chancery Court, where he was ordered reinstated by the Chancellor. The defendants have appealed to this Court. We reverse the judgment of the Chancellor and reinstate the School Board's decision to terminate plaintiff as a teacher.

The charges against Way arose from an incident on October 16, 1995, after school hours at Oak Crest Mobile Home Park. There is material evidence to support the following summary of what occurred:

Around 7:00 p.m. on the date Way went to the mobile home park for the purpose of visiting a truant student, and to measure a friend's trailer to see if he could attach a porch for her. Way placed a ladder against the trailer and ascended it. When a neighbor, Ms. Elmore, saw Way as he crossed her yard with the ladder, she and her husband confronted Way as he alighted from the ladder. When Way began to run away, two neighbors grabbed him and pulled him back to Hawn's trailer, and Ms. Hawn came out and advised them that Way was her friend and to let him go. Way claimed that one of the neighbors had a gun, and the neighbors claimed that Ms. Hawn had a gun, (but no one admitted to having a gun at the hearing). Way was released and he left in his truck.

Neighbors then called the Sheriff's Department, and an officer came to the trailer park, at which time Way drove by. The officers followed Way and brought him back to the trailer park, where he was identified by the Elmores. The Elmores swore out a warrant against Way for trespassing, and Way was taken to the Criminal Justice Center and booked.

After being released on bond, Way returned to the trailer park to retrieve his ladder. Ms. Elmore saw Way and notified the landlord, and the Elmores, the landlord, and other neighbors blocked Way's truck as he tried to exit the mobile home park. He managed to exit the trailer park, but was then charged with vandalism, criminal trespass, and reckless driving by the landlord. Way was found guilty of these charges, but was granted a diversion. He was found not guilty of the original trespass charge by Elmore.

Way spoke to a reporter with the Crossville Chronicle on October 18, 1995, and explained his version of the incident. This was carried by the paper, as well as a local radio station. On October 25, 1995, Superintendent Hall wrote a letter to Way demanding an explanation of the incident. He also asked Hodge, the principal of the High School, to investigate the incident. The following day, Way brought Hall a letter from his attorney stating that Way was in the trailer park to assist a friend regarding her porch. Hall then received a letter from Hodge on October 27, stating that Way had told him he was at the trailer park to check on a student who had not been coming to school regularly. (Way acknowledged later that one of the reasons he went to the trailer park was to check on the student). Hodge also reported that Way was not required to make home visits as part of his job duties.

Then on November 2, 1995, the Superintendent wrote Way informing him that based upon the police report, Hodge's report, and a lack of response from Way, he was suspending Way without pay effective immediately. Hall also informed Way that he would request a hearing before the School Board regarding whether Way's conduct breached the standard of conduct expected of him, and whether it affected his ability to perform his job.

Then on December 15, 1995, the Superintendent again wrote Way advising that he

had recommended to the Board that Way be terminated, and that the Board approved the placement of charges against Way, and a letter was attached outlining the charges. The letter stated that Way was charged with unprofessional conduct because he was acting or purporting to act in his official capacity when the incident at the trailer park occurred, and because his conduct that night raised serious concerns regarding his fitness to teach and exercise control over students. Hall also expressed concern in the letter that Way's version of the matter did not seem to correspond to the actual occurrences.

After the Board held a lengthy hearing over several days, the Board voted to dismiss Way.

On appeal to the Chancery Court, the Chancellor filed a Memorandum Opinion reversing the Board's decision and ordering Way reinstated with back pay. The Chancellor determined that part of the evidence introduced at the hearing before the Board was erroneously admitted because the misconduct which some of the testimony covered was not included in the written charges provided to Way. Specifically, the Chancellor pointed to the sheriff's testimony that Way used profanity in a conversation with him, and ruled in Way's favor on the basis that the Board had acted arbitrarily and capriciously in dismissing Way, and that there was no material evidence to support the Board's decision.

On appeal, defendants raised various issues, but we conclude that the dispositive issues are whether the Board acted arbitrarily, and whether there is any material evidence to support it's decision.

Tennessee Code Annotated §49-5-511(a)(4) requires that when charges are brought to the Board against a teacher, those charges must be in writing and must specifically state the offenses which are charged. Tennessee cases which have construed this section have generally held that the notice must be "sufficient in substance and form to fairly apprize the teacher of the charge against him and enable him to prepare his defense in advance of the hearing." *Potts v. Gibson*, 469 S.W.2d 130 (Tenn. 1971). Thus the Supreme Court ruled in *Potts*, that where the teacher received notice that he was being charged with incompetence and neglect of duty, and also received a list of the problems which were being attributed to him . . . said notice was adequate to satisfy the requirements of the Code. *Accord: Enochs v. Nerren*, 949 S.W.2d 686 (Tenn. Ct. App. 1996) and *Lannom v. Board of Education*, 2000 WL 243971 (Tenn. Ct. App. 2000).

In this case Way was notified of the defendants' concerns in a series of letters. In the first letter dated October 25, 1995, Hall stated that "[b]ecause of the conflicting reports in the newspaper article, telephone calls, and conversations concerning your arrest with law enforcement officers, I want an explanation from you concerning this incident. . . ." The second letter of November 2, 1995, stated that Hall would notify the Board regarding 1) the inability of Hall to obtain information from Way regarding what happened, 2) conflicting statements regarding whether Way was conducting school business on the night in question, 3) concern as to whether Way's conduct breached the standard of conduct expected of teachers, and 4) concern over how the incident affected

Way's job performance and relationship with administrators and teachers. The third letter of December 15, 1995, charged Way with unprofessional conduct, based upon the fact that Way was in the mobile home park in his position as assistant principal (or was using his position to provide a reason for being there), also Way's version of the incident did not comport with other witnesses, and Way fled the scene when confronted. Further, Way was arrested and charged with various misdemeanors, and his conduct was unbecoming his position and affected his ability to teach and exercise discipline and control over students.

The Chancellor correctly held that "unprofessional conduct" encompasses not only the types of conduct enumerated in Tenn. Code Ann. §49-5-501 (immorality, conviction of felony, dishonesty, failure to pay debts, use of intoxicants, disregard of code of ethics, etc.), but also conduct which is generally dishonorable, in violation of the ethical code, and has a negative effect on the school system, and indicates an unfitness to teach. *See Morris v. Clarksville-Montgomery County*, 867 S.W.2d 324 (Tenn. Ct. App. 1993). The Chancellor ruled, however, that the evidence concerning Way's use of profanity in a conversation with the sheriff, and Ms. Elmore's testimony that she had seen Way's truck in the park at least fifty times, and her testimony that the ladder Way carried had the initials "CCHS" on it, should not have been allowed as it was outside the scope of the written charges.

Our review of the deliberations of the Board, however, indicates that the Board was concerned not only with the testimony regarding the conversation with the sheriff, but regarding all of the evidence, where there were numerous unexplained inconsistencies between Way's version of the events and the accounts given by the various other witnesses. Given the rather broad definition of unprofessional conduct, coupled with the specific allegations against Way of inconsistency and lack of truthfulness as expressed in the charges, the Board could properly consider whether Way was a credible witness in coming to its decision. Dishonesty is one of the specific factors constituting unprofessional conduct under the statute, and a review of the Board's deliberations and the evidence demonstrate that this was of paramount concern to the members of the Board in arriving at their decision to terminate Way.

Way relies heavily upon *Turk v. Franklin Special School District*, 640 S.W.2d 218, 220 (Tenn. 1982), where the Court explained that charges against the teacher should be "specifically stated with substantial certainty; yet the technical nicety required in indictments is not necessary." In *Turk*, however, the evidence which the Court deemed to be improperly allowed stemmed from events completely unrelated to the specific incident of misconduct in question. In that case, the teacher had no reason to expect that these events would have been brought up at the hearing, and thus was not on notice this evidence would be presented. In this case, all of the evidence presented, related directly to the events of the night in question[1] and was introduced for the purpose of substantiating the charges against Way, which included pointing out Way's potential dishonesty.

---

[1] The only exception is Ms. Elmore's testimony regarding having seen Way's truck numerous times in the parking lot in the past, which was introduced to explain how Ms. Elmore determined the man she saw running with a ladder to that particular truck was Way.

Throughout the hearing, the evidence was sharply in dispute concerning the events of the evening in question, and the Board clearly did not credit Way's version of the events. The Board's comments during deliberations established that their conclusions were based primarily upon their judgment that Way was not being truthful. The definition of the charge of unprofessional conduct which was leveled against Way includes dishonesty, and the written charges specifically address that Way's version of the facts of the incident did not comport with other witnesses' testimony, and specifically referred to conversations with law enforcement officers. We determined that Way was adequately notified that his version of the events of the evening was being called into question, and was a focal point in the dispute. We hold that the Trial Court erred in finding that Way received insufficient notice of the charges against him.

The parties are not in agreement as to the proper standard of review to be followed by the Chancellor in determining whether there was material evidence to support the Board's decision. Tenn. Code Ann. §49-5-513 provides that "review of the court shall be limited to the written record of the hearing before the board and any evidence or exhibits submitted at such hearing. Additional evidence or testimony shall not be admitted except as to establish arbitrary or capricious action or violation of statutory or constitutional rights by the board." Tenn. Code Ann. §49-5-513(g). The statute further provides that the chancellor shall reduce his or her findings of fact and conclusions of law to writing and make them a part of the record. Tenn. Code Ann. §49-5-513(h).

Under this standard, the Trial Court is to limit its scope of review to the transcript of the hearing before the Board (except where additional evidence is used to show that the Board acted arbitrarily or capriciously) and the Court is to determine whether there is material evidence to support the Board's decision. *Baltrip v. Norris*, 23 S.W.3d 336 (Tenn. Ct. App. 2000); *Wallace v. Mitchell*, 2000 Tenn. App. LEXIS 558 (Tenn. Ct. App. 2000); *Smith v. Williams*, 1995 WL 498723 (Tenn. Ct. App. 1995).

Under the material evidence rule, the court was required to accept the Board's decision if it was supported by any material evidence. *See, Simpson v. Frontier Community Credit Union*, 810 S.W.2d 147 (Tenn. 1991). The record contained material evidence which contradicted Way's version of the events of the evening in question, and the Board clearly judged Way to be less than a credible witness. The Board's deliberations and subsequent decision to dismiss Way was based upon their finding that he had been less than truthful and that dishonesty is one of the factors to be considered in determining whether a teacher is guilty of unprofessional conduct. Courts should be reluctant to substitute their judgment for the judgment of the Board unless the Board's judgment violates the law. *Childs v. Roane County Board of Education*, 929 S.W.2d 364 (Tenn. Ct. App. 1996).

The Chancellor felt constrained to reverse the Board's decision because the Board members allowed evidence which he deemed to be outside the scope of the charges to be entered. As we have previously found, this evidence was relevant to the charges, and there is ample material evidence to support the Board's decision, independent of the testimony which the Chancellor felt

-5-

should not have been admitted.

We find it unnecessary to view the other issues raised on appeal, and reverse the judgment of the Trial Court and reinstate the Board's decision.

The cause is remanded with the cost of the appeal assessed to Arlon Way.

_____
HERSCHEL PICKENS FRANKS, J.