IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 9, 2002 Session

## RONNIE SYKES v. ROBBIE RICHARDSON, ET AL.

**A Direct Appeal from the Chancery Court for Smith County**
**No. 6265      The Honorable Don R. Ash, Judge**

---

**No. M2001-02097-COA-R3-CV - Filed August 13, 2002**

---

Tenured teacher filed a petition for review of board of education action discharging him from his teaching position. The trial court, the Honorable Don R. Ash, presiding by interchange, upheld the decision by the board of education. Petitioner appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

John H. Baker, III of Murfreesboro for Appellant, Ronnie Sykes

Robert G. Wheeler, Jr., Nashville, for Appellees, Robbie Richardson and the Smith County Board of Education

**OPINION**

This case arises under the Tennessee Teachers' Tenure Act, T.C.A. § 49-5-501, *et seq.* (1996) ("TTA"). Appellant/Petitioner, Ronnie Sykes ("Mr. Sykes"), was a tenured teacher in the Smith County Schools. Until his suspension in October of 1997, Mr. Sykes had most recently taught Vocational Agriculture at Smith County High School. The record indicates that Mr. Sykes received favorable performance reviews and had served as principal for several schools during his 28 years with the Smith County school system.

Mr. Sykes dismissal was precipitated by events which occurred on October 22, 1997 concerning Mr. Sykes' fiancé, Christine Price ("Ms. Price"), his roommate, Michael Velosic ("Mr. Velosic"), and C.P., a fifteen year-old girl who had run away from a State juvenile facility in Bradley County, Tennessee. On that date, police pulled over Ms. Price, Mr. Velosic, and C.P. following a tip that the group was passing forged checks in Mr. Sykes' name. After learning that Ms. Price and Mr. Velosic lived with Mr. Sykes and used illegal drugs, the police brought Mr. Sykes in for

questioning regarding the checks and alleged drug use in his home. During his interview with police, Mr. Sykes executed a consent form allowing the police to search his home. When asked what they might find, Mr. Sykes informed the police that he was aware of a marijuana pipe in the bathroom of his home.

During their search of Mr. Sykes' home, police found drug paraphernalia, including: posters promoting the use of illegal drugs; a marijuana pipe; a plate with drug residue on it; a homemade drug pipe; a spoon used for cooking crack cocaine; rolling papers; and a rolling machine. According to police testimony presented at the Board of Education hearing on Mr. Sykes' termination, the paraphernalia "was scattered. . . throughout the house." Michael Thompson, the Director of the 115th Judicial District Drug Task Force, one of the officers who conducted the search, testified that Mr. Sykes' house "was typical of a house that was pretty much running rampant in drugs."

During their investigation, the police learned that C.P. was a runaway from a State juvenile facility, and had been living in Mr. Sykes' home for approximately 10 days. Mr. Sykes testified that, although he suspected C.P. had run away from the juvenile facility, he did not report her whereabouts to the proper authorities because she had recently given birth to a baby she was not able to keep, and he felt badly for her.[1] Based upon their investigation, the police issued two criminal warrants against Mr. Sykes for contributing to the delinquency of a minor and possession of drug paraphernalia on October 22, 1997. Mr. Sykes was subsequently suspended from his teaching and bus driving duties on October 23, 1997. On November 11, 1997, Robby Richardson, Superintendent of the Smith County Board of Education sent a memorandum to Mr. Sykes, charging him with conduct unbecoming to a member of the teaching profession as defined in T.C.A. 49-5-511(a)(3). On January 17, 1998, Mr. Sykes accepted pretrial diversion on both of the criminal charges.

The Smith County Board of Education (the "Board") held a hearing to determine whether Mr. Sykes should be dismissed from his tenured teaching position. At the end of the hearing, the Board voted five to two in favor of a finding that the charges against Mr. Sykes were proven by a preponderance of the evidence, and five to one, with one member abstaining, to dismiss Mr Sykes immediately.

Mr. Sykes filed a "Complaint and Petition for Writ of Certiorari" with the Chancery Court of Smith County on April 6, 1998. which the trial court granted on April 22, 1998. At a hearing held on June 20, 2001, the trial court stated that the Board's decision would be affirmed. On July 24, 2001, the trial court entered an order sustaining the decision of the Board. Attached to, and incorporated into, that Order were the trial court's Findings of Fact and Conclusions of Law filed on July 23, 2001, providing:

---

[1]The record indicates that C.P. had previously lived with Mr. Sykes and Ms. Price in October of 1997 with the approval of the Department of Human Services and C.P.'s mother.

In 1997, Chief Lewis of the Carthage police department interviewed Mr. Ronnie Sykes in the course and scope of their investigation of worthless checks being passed around the Carthage area by three individuals, Christine Price, Michael Velosic, and C.P.. During the course of their investigation, Mr. Sykes told Chief Lewis C.P. had recently begun to reside with him and Ms. Price. He was aware that C.P. was a runaway. In fact, C.P. was an escapee from a juvenile facility in another county.

When asked if the police could search his residence, Mr. Sykes gave consent. He did disclose to Chief Lewis they would find a marijuana pipe in the bathroom area of the house. Upon inspection of Mr. Sykes home, Detective Mike Thompson and Chief Lewis recovered various drug paraphernalia including rolling papers, measuring scales, a cooking spoon, medical hemostats, razor blades used for crack cocaine, a rolling machine, a homemade pipe for smoking crack cocaine, as well as the previously mentioned marijuana pipe. Many of these items were recovered from the master bedroom of the home.

Evidence presented by the Police Department at trial indicated that in their opinion the home appeared as though it was "running rampant in drugs" and was "common with individuals using crack cocaine as a drug house." Mr. Sykes was eventually charged with contributing to the delinquency of a minor and possession of drug paraphernalia. Ms. Price and Mr. Velosic were also charged with possession of drug paraphernalia and each pled guilty. Mr. Sykes was granted pre-trial diversion on both charges.

At the time of his arrest, Mr. Sykes was a fifty-year old teacher at Smith County High School. After the conclusion of the criminal cases, a school board hearing was held on whether to continue the tenure of Mr. Sykes. Mr. Sykes testified while he recognized it is unlawful to possess drug paraphernalia, he did not know of any unlawful drug usage in his home. In fact, he knew his fiancee, Christine Price, to be a crack cocaine addict although testifying Ms. Price had never used drugs in his presence.

Though he stated he knew for what activity the drug paraphernalia was used, he had only seen paraphernalia in his home on a few occasions. Mr. Sykes further testified he knew it was unlawful to harbor an escaped minor, but did not report C.P. to the

authorities even though she lived in the Sykes residence for 10 to 11 days.

On November 11, 1997, Superintendent Richardson advised the Smith County Board of Education he had suspended Mr. Sykes without pay. Richardson also notified Mr. Sykes he was being charged with the cause for dismissal of a tenured teacher known as "conduct unbecoming to a member of the teaching profession." The basis for the charges against Mr. Sykes and the recommendation for dismissal by Mr. Richardson was the result of the two criminal warrants being filed against Mr. Sykes. On November 19, 1997, Mr. Sykes was notified the Smith County School Board had certified the charges against him on the grounds of unprofessional conduct or conduct unbecoming to a member of the teaching profession. He was given a statement of his procedural rights issued by the Tennessee Department of Education per T.C.A. 94-5-511.

Smith County High School Principal Roger Lewis testified the school had numerous programs aimed at educating children against drug use. He further testified the School Board has a policy prohibiting paraphernalia by students and Mr. Sykes' actions are counter to what he, as principal, is trying to accomplish in discouraging students from using drugs.

Smith County School Superintendent Robbie Richardson recommended Mr. Sykes' dismissal as a tenured teacher because the conduct displayed by Mr. Sykes was unbecoming as a member of the teaching profession and was in direct violation of the job description of a secondary school teacher. The job description reads, in part, "[the job] was to represent the school and community in a positive manner." Mr. Richardson did not have that authority at the time of this hearing to fire Mr. Sykes. He occupied his office by way of election and only had the power and authority to recommend the dismissal of the Plaintiff Sykes.

Testimony was also presented regarding the "immoral activities" in Mr. Sykes' relationship with his financée Christine Price.

THE LAW

This case comes before this court on a writ of certiorari (T.C.A. 49-5-5139(a)). The standard by which this matter is

reviewed is *de novo* with no presumption of correctness attaching to the School Board's finding of fact, and this Court is required to determine all issues as if no prior determination had been made; substituting judgment for that of the school board. (Henderson v. Members of the Benton County Board of Education, 2000 Tenn. App. LEXIS 223). The burden of proof to be considered is a preponderance of the evidence that the facts in the record exist that meet one of the statutory causes for dismissal of a tenured teacher. (Williams v. Pittard, 604 S.W.2d 845 (1980).

Five elements may be considered by this court when determining the termination of a tenured teacher in the State of Tennessee when charged with "conduct unbecoming a member of the teaching community." They include but are not limited to, a) immorality; b) conviction of a felony or a crime involving moral turpitude; c) dishonesty, unreliability, continued willful failure or refusal to pay one's just and honest debts; d) disregard of the Code of Ethics of the Tennessee Education Association in such a manner as to make one obnoxious as a member of the profession; or e) improper use of narcotics or intoxicants. (T.C.A. 49-5-501(3)). It appears Mr. Sykes was given clear notice of the charges against him as well as a statement of his procedural rights issued by the Tennessee Department of Education per T.C.A. 49-5-511.

A significant question here is whether or not there is a rational nexus between Mr. Sykes' charges, whether convicted or not, and his ability to teach and influence young people in Smith County. Based upon the record, the question must be answered in the affirmative.

This Court finds the "immoral activities" between Mr. Sykes and Ms. Price were irrelevant and the focus of the School Board's decision encompassed the charges of drug paraphernalia and the contributing to the delinquency of a minor. It is also apparent to this court that the action of the Smith County School Board against Mr. Sykes was not "arbitrary and capricious." Based upon the facts and the existing laws, it is the opinion of this Court that the decision of the Smith County Board of Education be affirmed. Costs shall be assessed to Mr. Sykes. Mr. Wheeler shall draw the Order.

Mr. Sykes appeals the Order of the Smith County Chancery Court and presents the following four issues for our review: (1) Whether the Board denied Appellant his statutory and due process rights to a full and fair hearing by considering matters which were not included in the notice of charges provided to Appellant; (2) Whether the Board incorrectly determined that service of two

criminal warrants was sufficient grounds for termination of a tenured teacher; (3) Whether the Board's decision was arbitrary and capricious because the Board improperly reasoned that, because drug paraphernalia was found in Appellant's home, Appellant must be guilty of illegal possession of drug paraphernalia; and (4) Whether there was material evidence to support the Board's finding that Appellant should be terminated from his tenured teaching position. For the following reasons, we affirm the trial court's order.

Judicial review of teacher tenure cases is controlled by T.C.A. § 49-5-513 which, as pertinent to the issue before us, provides:

> (a) A teacher under "permanent tenure" or "limited tenure" status who is dismissed or suspended by action of the board may petition for a writ of certiorari from the chancery court of the county where the teacher is employed.
>
> (b) The petition shall be filed within thirty (30) days from the receipt by the teacher of notice of the decision of the board. The petition shall state briefly the issues involved in the cause, the substance of the order of the board, or the respects in which the petitioner claims the order of the board is erroneous, and praying for an accordant review. The petition shall be addressed to the presiding chancellor and shall name as defendants the members of the board and such other parties of record, if such, as were involved in the hearing before the board.
>
> *          *          *
>
> (f)  All defendants named in the petition, desiring to make defense, shall do so by answer (in which grounds of demurrer shall be incorporated) to the petition within thirty (30) days from the date of the filing of the petition, unless the time be extended by the court. . . .
>
> (g) The cause shall stand for trial and shall be heard and determined at the earliest practical date, as one  having precedence over other litigation, except suits involving state, county or municipal revenue. The review of the court shall be limited to the written record of the hearing before the board and any evidence or exhibits submitted at such hearing. Additional evidence or testimony shall not be admitted except as to establish arbitrary or capricious action or violation of statutory or constitutional rights by the board.

This Court, in ***Winkler v. Tipton County Bd. of Educ.***, 63 S.W.3d 376, 381 (Tenn. Ct. App. 2001), noted the appropriate standard of review for cases under the TTA:

> Judicial review of a teacher dismissal case pursuant to T.C.A. § 49-5-513 requires the chancery court to review the transcript of the hearing before the board in order to determine ***whether there was any material evidence to support the board's decision***. If there is, it is the responsibility of the trial court to affirm. On the question of whether the Board acted arbitrarily, capriciously or illegally, the trial court may hear new evidence and must make independent findings in this regard. Our scope of review on appeal from chancery court is no greater than that court's review of the Board decision. See ***Goodwin v. Metropolitan Board of Health***, 656 S.W.2d 383, 387 (Tenn. Ct. App.1983).

***Id.*** (quoting ***Wallace v. Mitchell***, No. W1999-01487-COA-R3-CV, 2000 Tenn. App. LEXIS 558, at *6-7 (Tenn. Ct. App. Aug.16, 2000) (emphasis added).

We first address Mr. Syke's contention that the Board failed to provide him with adequate due process. Specifically, it appears from the record that Mr. Sykes is alleging that the Board denied him due process by: (1) failing to adequately describe the nature of the charges against him; and (2) by considering other, uncharged conduct, in arriving at its decision to dismiss. him.

There is no question but that Mr. Sykes is entitled to notice and a hearing under the TTA. ***See*** T.C.A. §§ 49-5-512, 513 (1996). The TTA provides that, "When charges are made to the board of education against a teacher, charging the teacher with offenses which would justify dismissal of the teacher under the terms of this part, the charges shall be made in writing, specifically stating the offenses which are charged." T.C.A. § 49-5-512 (1996). Similarly, the TTA provides that, once a teacher receives notice of charges, he has the right to a hearing before the school board, at which time he may present witnesses and evidence in his defense. ***See*** T.C.A. § 49-4-513 (1996). In this regard, the Tennessee Supreme Court has recognized that:

> While the Tennessee Teachers' Tenure Act may not provide tenure teachers the full range of procedural safeguards that are mandated for criminal defendants by our state and federal constitutions, the Act does make it clear that, at a minimum, notice and a hearing are required. It has further been established that a tenure teacher is entitled to a "due process" hearing prior to deprivation of the significant property interest which a teacher obtains upon being granted tenure. ***See, e. g., Sullivan v. Brown***, 544 F.2d 279, 284 (6th Cir. 1976).

***Williams v. Pittard***, 604 S.W.2d 845, 849 (Tenn. 1980).

In reviewing the record in this case, we cannot say that Mr. Sykes was denied due process based upon the manner in which he was notified of the charges against him. The Board, on November 11, 1997, advised Mr. Sykes that it was charging him with "unprofessional conduct/conduct unbecoming a member of the teaching profession" and "criminal warrants filed on October 22, 1997," specifically: (1) "contributing to the delinquency of a minor" and (2) "possession of drug paraphernalia." While counsel for Mr. Sykes argues that these charges were too vague to afford Mr. Sykes an opportunity to adequately defend himself at the Board hearing, the record indicates that Mr. Sykes was aware of the fact that the charges related to his housing C.P. and to the drug paraphernalia found in his home. Specifically, the record of the Board hearing contains the following exchange:

> Q (Mr. Wheeler): And when these charges on this School Board came down and said, refer to contributing to the delinquency of a minor, you knew that it had to do with C.P., didn't you?
> A (Mr. Sykes): Yes.
> Q: That wasn't a surprise?
> A: No.
> ***********
> Q: So with regard to contributing to the delinquency of a minor and possession of drug paraphernalia that was written up and referred to in these charges in November, you knew that they were the things that have been discussed at length here tonight, didn't you?
> A: Yes.

As to Mr. Sykes' allegation regarding the introduction of evidence regarding other, uncharged matters, we agree with the trial court that these matters were irrelevant. The Board should not have permitted testimony relating to alleged "immoral activities" between Mr. Sykes and Ms. Price, or regarding Ms. Price's choice of profession. In spite of this conclusion, we believe that the presentation of any such evidence was harmless error, in that the Board based its decision to terminate Mr. Sykes' employment upon the other, specified charges addressed above. For these reasons, we hold that Mr. Sykes was provided proper process notice and hearing.

Since the next three issues Mr. Sykes presents on appeal all concern whether the evidence presented at the Board hearing was sufficient to terminate Mr. Sykes, we will address them together.

The TTA provides that a tenured teacher may be dismissed from his position for "unprofessional conduct". *See* T.C.A. § 599-5-511 (1996). T.C.A. § 59-5-501, under the term, "conduct unbecoming a member of the teaching profession,"[2] defines such conduct as:

> (3) "Conduct unbecoming to a member of the teaching profession" *may consist of, but not be limited to*, one (1) or more of the following:
>
> (A) Immorality;
> (B) Conviction of a felony or a crime involving moral turpitude;
> (C) Dishonesty, unreliability, continued willful failure or refusal to pay one's just and honest debts;
> (D) Disregard of the code of ethics of the Tennessee Education Association in such manner as to make one obnoxious as a member of the profession; or
> (E) Improper use of narcotics or intoxicants. . .

*Id.* (emphasis added). As we have noted above in boldface, this list is not exhaustive. This Court, in *Baltrip v. Norris*, explained that "[u]nprofessional conduct" has been defined as "conduct that violates the rules or the ethical code of a profession or that is unbecoming a member of a profession in good standing, or which indicates a teacher's unfitness to teach." 23 S.W.3d 336, 340 (Tenn. Ct. App. 2000), *perm. to appeal denied* (Tenn. 2000)(quoting *Morris v. Clarksville-Montgomery County Consol. Bd. of Educ.*, 867 S.W.2d 324, 329 (Tenn. Ct. App. 1993)).

In the case at bar, the trial court found that, "A significant question here is whether or not there is a rational nexus between Mr. Sykes' charges, whether convicted or not, and his ability to teach and influence young people in Smith County. Based upon the record, the question must be answered in the affirmative." We agree with the trial court's assessment of Mr. Sykes' conduct.

Regarding the two criminal warrants, counsel for Mr. Sykes argues that, since Mr. Sykes was never convicted of any offense, evidence of these warrants was insufficient to merit a dismissal by the Board. While we agree that the warrants, and Mr. Sykes' subsequent pretrial diversion agreements, do not constitute "convictions" under T.C.A. § 49-5-501(a)(3)(B), we believe that Mr. Sykes' actions, however well-intentioned, could be considered "unprofessional" by the Board.

The record indicates that Mr. Sykes had, with C.P.'s mother's permission, taken care of the minor before, and that C.P. had a close, fatherly relationship with Mr. Sykes. However, when C.P. showed up at his door this time, Mr. Sykes clearly understood that C.P. was not supposed to be there.

---

[2]We note that the TTA uses the terms "unprofessional conduct" and "conduct unbecoming a member of the teaching profession" interchangeably.

Mr. Sykes testified at the Board hearing that C.P. "never told me she was a runaway, but the assumption was there." Mr. Sykes also testified that the night C.P., Ms. Price and Mr. Velosic were picked up by the police, he arrived home around 9:00 p.m. and no one was there. Although he testified that, when the three still had not returned around 11:00 p.m., he "started getting worried," Mr. Sykes did nothing. When he received a call from the sheriff's office informing him that C.P., Ms. Price and Mr. Velosic "had been picked up and were in custody," Mr. Sykes "went to sleep." It was not until sometime the next morning, when he was handcuffed and brought to the Carthage Police Station, that Mr. Sykes found out what had happened the night before. Mr. Sykes also indicated that he felt that he should have reported C.P.'s whereabouts to the proper authorities, but felt "compassion" for her. Based upon Mr. Sykes' own testimony on the issue of the contributing to the delinquency of a minor charge, we believe there was ample, material evidence for the Board to find that Mr. Sykes' behavior was "unprofessional."

Regarding the drug paraphernalia charges, counsel for Mr. Sykes argues that the Board "shifted the burden of proof" to Mr. Sykes at the Board hearing when the Board "presumed as a matter of law" that Mr. Sykes was guilty of the charges. We believe this argument is misplaced. Mr. Sykes was found guilty of the charge of unprofessional conduct. The Board could certainly find such unprofessional conduct based upon Mr. Sykes' own admission that he "knew of drug paraphernalia in [his] house." The Board presented testimony at the hearing regarding the Smith County Schools' commitment to discouraging students from using drugs and alcohol, and it is reasonable to infer that a teacher whose home is found to contain many drug-related items, and who has knowledge of his roommates' drug abuse, but allows those roommates to remain in his home, may be considered unfit to teach.

For the foregoing reasons, we affirm the order of the trial court upholding the decision of the Smith County Board of Education to terminate Mr. Sykes' employment. This case is remanded to the trial court for any further proceedings consistent with this opinion. Costs of this appeal are assessed to the Appellant, Ronnie Sykes, and his sureties.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.