IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 5, 1999 Session

## JAMES EDWARD CRAWFORD v. RAY THOMASON, ET AL.

**Appeal from the Chancery Court for Rutherford County**
**No. 95-CV-1147     Robert E. Corlew, III, Chancellor**

---

**No. M1998-00926-COA-R3-CV - Filed March 28, 2001**

---

This appeal stems from a hostile work environment claim involving the Department of Streets and Signs of the City of Murfreesboro. After enduring approximately three years of racial harassment by his immediate supervisors, an employee of the Department of Streets and Signs filed suit in the Chancery Court for Rutherford County against the City of Murfreesboro, the city manager, and his two supervisors seeking damages and injunctive relief under the Tennessee Human Rights Act. The City moved for summary judgment, pointing out that the offending supervisors had been terminated less than one month after the employee brought their conduct to the attention of the public works director. The trial court granted the summary judgment and dismissed the complaint. The employee has appealed. After reviewing the record in light of the principles announced in *Parker v. Warren County Util. Dist.*, 2 S.W.3d 170 (Tenn. 1999), we have determined that the City is entitled to a judgment as a matter of law. Accordingly, we affirm the summary judgment.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Granville S.R. Bouldin, Jr., Murfreesboro, Tennessee, for the appellant, James Edward Crawford.

Thomas L. Reed, Jr. and Jerry E. Farmer, Murfreesboro, Tennessee, for the appellees, City of Murfreesboro and Roger Haley.

**OPINION**

James E. Crawford went to work in the City of Murfreesboro's Department of Streets and Signs on June 8, 1992. The Department employs between ten and thirteen persons to maintain the city's streets and street signs. The employees are divided into work crews to perform their tasks. When he was first hired, Mr. Crawford worked part-time and was assigned to use a weed-eater to

maintain the right-of-ways. He became a full-time employee after working part-time for approximately three months.

Mr. Crawford was the second African-American employee in the Department. However, within months after Mr. Crawford was hired, the other African-American employee was discharged for misconduct on the job, thereby leaving Mr. Crawford as the only employee of color in the Department. Shortly thereafter, Mr. Crawford's two immediate supervisors, Ray Thomason and Jerry Alcorn, began engaging in racially offensive conduct. The first incident involved Mr. Thomason's placing a toy wooden monkey in a common area of the workplace and stating in the presence of others that it represented Mr. Crawford. The monkey remained in the workplace for three days; however, on seven or eight occasions during the next two years, Mr. Thomason placed a banana in an overhead heater and told Mr. Crawford, "Hey monkey, climb up there and get that banana."

Mr. Thomason and Mr. Alcorn also repeatedly referred to Mr. Crawford as a "darkie" or a "nigger." On occasion, Mr. Crawford believed that Mr. Alcorn was "joking" when he made these remarks and responded by calling Mr. Alcorn the "grand wizard of the KKK." On at least one occasion, Mr. Alcorn responded that "we'll come over in front of your house and burn a cross in your yard." From 1992 through 1995, Mr. Crawford did not complain to Messrs. Thomason and Alcorn about their conduct or ask them to stop making racially derogatory remarks. Likewise, he did not complain to the Director of Public Works, the Director of Personnel, the City's EEOC compliance officer, or the City Manager about the conduct.

In April or May 1994, the Department hired an employee to fill a vacancy created when one of the employees left for another job. Mr. Crawford did not like the fact that the new employee was assigned to drive one of the tractors while he was still assigned to use the weed-eater because he believed that junior employees should "go to the bottom and . . . move up." He complained about the job assignment to Rick Cantrell, the Public Works Director, and within three weeks, Mr. Crawford was assigned to driving the tractor rather than the new employee. Mr. Crawford did not inform Mr. Cantrell about Messrs. Thomason's and Alcorn's conduct at that time.

Sometime in early 1995, Mr. Crawford consulted a lawyer because he was tired of the race-based comments being made by Messrs. Thomason and Alcorn. On May 18, 1995, apparently on his lawyer's advice, Mr. Crawford asked his fellow employees to sign a document stating that they had heard Messrs. Thomason and Alcorn call Mr. Crawford a "darkie" and a "nigger" and that they had observed Mr. Thomason's conduct with the wooden monkey and the banana. Eight of Mr. Crawford's fellow employees signed the document.

Approximately one week later, Mr. Crawford and Mr. Thomason had an angry confrontation over the status of Mr. Crawford's compensatory time. Mr. Crawford called Mr. Thomson a "liar" after Mr. Thomason told him that he did not have any compensatory time. When Mr. Crawford walked away, Mr. Thomason commented to another employee out of Mr. Crawford's hearing that "I hate that damn nigger." After the other employee related Mr. Thomason's comment to Mr.

Crawford, Mr. Crawford decided that he was "tired of Mr. Thomason saying he hated that nigger." Accordingly, he decided that he would discuss the matter with Mr. Cantrell.

On May 31, 1995, Mr. Crawford had his first discussion with Mr. Cantrell about the conduct of Messrs. Thomason and Alcorn. Immediately following this conversation, Mr. Cantrell, with the assistance of the City's director of personnel and EEOC compliance officer, began investigating the matter. On June 19, 1995, Roger Haley, the City Manager, suspended Messrs. Thomason and Alcorn and told Mr. Crawford that the City would not tolerate such conduct. On June 27, 1995, after the investigation was completed, Mr. Haley terminated Messrs. Thomason and Alcorn.

On July 7, 1995, Mr. Crawford filed suit in the Circuit Court for Rutherford County against Messrs. Thomason, Alcorn, Haley, and the City. He alleged violation of his rights under the United States Constitution and the Tennessee Human Rights Act and demanded compensatory damages and $2,000,000 in punitive damages. He also sought an injunction prohibiting the discriminatory conduct pending a final hearing on the merits. By agreed order, the suit was transferred to the Chancery Court for Rutherford County. Following the trial court's denial of the motions to dismiss the claims against the individual defendants, the City moved for a summary judgment on the ground that it had taken prompt remedial action after being informed of the conduct. On May 1, 1998, the trial court entered an order granting the summary judgment and dismissing Mr. Crawford's claims against all parties.[1] Mr. Crawford has perfected this appeal.

## I.
### APPELLATE REVIEW OF SUMMARY JUDGMENTS

The standards for reviewing summary judgments on appeal are well-settled. Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). They are not, however, appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion – that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *White v. Lawrence*, 975 S.W.2d 525, 529-30 (Tenn. 1998); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

Summary judgments enjoy no presumption of correctness on appeal. *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000); *Nelson v. Martin*, 958 S.W.2d 643, 646 (Tenn. 1997). Accordingly, appellate courts must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997). We must consider the evidence in the light most favorable to

---

[1] During the March 27, 1998 hearing on the City's motion, the parties apparently agreed upon the dismissal of Mr. Crawford's claims against the individual defendants and that the case would proceed solely against the City. Thus, this appeal will not affect the dismissal of Mr. Crawford's claims against the individual defendants.

the non-moving party, and we must resolve all inferences in the non-moving party's favor. *Terry v. Niblack*, 979 S.W.2d 583, 585 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Baltrip v. Norris*, 23 S.W.3d 336, 340 (Tenn. Ct. App. 2000). When reviewing the evidence, we must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

## II.
### MR. CRAWFORD'S HOSTILE WORK ENVIRONMENT CLAIM

Mr. Crawford insists that the trial court erred by granting the summary judgment dismissing his hostile work environment claim. He asserts that his claim should be measured against the standards for similar claims announced by the United States Supreme Court after the trial court granted the summary judgment and that, if these standards are employed, the City is not entitled to a summary judgment. We agree that the evidence both in favor of and in opposition to the City's summary judgment motion must be considered in light of the new legal standards governing hostile work environment claims. However, when we apply these standards, we have concluded that the City was entitled to a summary judgment based on the undisputed facts.

### A.

The legal principles governing hostile work environment claims[2] under the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-101, -1004 (1998) have been evolving since Mr. Crawford filed his complaint. In 1997, the Tennessee Supreme Court, drawing a distinction between harassment by co-workers and supervisors, held that an employer's liability for harassment by a supervisor depends on

> (1) whether the supervisor's harassing actions were foreseeable or fell within the scope of employment; and (2) even if they were, whether the employer responded adequately and effectively to negate liability. . . . Accordingly, the employer's liability is predicated on its reaction to discriminatory conduct.

*Carr v. United Parcel Serv.*, 955 S.W.2d 832, 838 (Tenn. 1997). The trial court in this case adhered to the dictates of the *Carr* decision and focused on the City's response once Mr. Crawford complained about the conduct of Messrs. Thomason and Alcorn. Based on the uncontradicted evidence, the trial court concluded that the City's rapid and definitive response to the conduct was

---

[2] A hostile work environment is one "where conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996).

appropriate and, therefore, that the City was entitled to a summary judgment because Mr. Crawford had failed to demonstrate that he would be able to prove an essential element of the case.

Following the trial court's decision, the United States Supreme Court handed down two decisions redefining the standards for imposing liability on an employer in cases involving harassment by a supervisor. The Court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275, 2292-93 (1998). However, the Court also held that employers have an affirmative defense to supervisory harassment claims when no tangible employment action has been taken against an employee. The Court described the two necessary elements of this defense as follows:

> (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. at 765, 118 S. Ct. at 2270; *Faragher v. City of Boca Raton*, 524 U.S. at 807, 118 S. Ct. at 2293.

The United States Supreme Court's decisions in *Ellerth* and *Faragher* differed markedly from the Tennessee Supreme Court's *Carr* decision. While the *Carr* decision predicated the employer's liability solely on its reaction to discriminatory conduct, the *Ellerth* and *Faragher* decisions focused not only on the employer's response but also on the employer's efforts to prevent discriminatory conduct and the employee's efforts to take advantage of reasonably available preventive or corrective opportunities.[3]

The Tennessee Supreme Court revisited the *Carr* decision in 1999 because the Tennessee Human Rights Act must be construed in a manner consistent with the federal Civil Rights Acts of 1964, 1968, and 1972. Tenn. Code Ann. § 4-21-101(a)(1), -101(a)(2). The court adopted the standards in *Ellerth* and *Faragher* and overruled its *Carr* decision to the extent that it was inconsistent with these standards. Thus, employers in Tennessee are now subject to vicarious liability to a victimized employee for actionable hostile work environment harassment by a supervisor with immediate (or successively higher) authority over the employee. *Parker v. Warren County Util. Dist.*, 2 S.W.3d at 176. Employers may not raise an affirmative defense to these claims if tangible employment action has been taken against the employee. However, when no employment action has been taken, the defending employer may assert an affirmative defense comprised of two elements: (1) that the employer exercised reasonable care to prevent and promptly correct any

---

[3]*Steele v. Superior Home Health Care*, No. 03A01-9709-CH-00395, 1998 WL 783348, at *6 n.6 (Tenn. Ct. App. Nov. 10, 1998), *perm app. granted* (Tenn. June 7, 1999).

sexually harassing behavior and (2) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or that the employee unreasonably failed to otherwise avoid the harm. *Parker v. Warren County Util. Dist.*, 2 S.W.3d at 176.

The United States Supreme Court's decisions in *Ellerth* and *Faragher* and the Tennessee Supreme Court's decision in *Parker* involved sexual harassment claims. However, the principles in these cases are equally applicable to other types of harassment. Thus, the principles in these cases apply to racial harassment claims such as the claims Mr. Crawford is making in this case. *Allen v. Michigan Dept. of Corrections*, 165 F.3d 405, 411 (6th Cir. 1999); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 593 (5th Cir. 1998); *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1270 (10th Cir. 1998).

## B.

For the City to prevail with its summary judgment motion, it must demonstrate that it has established the three elements[4] of the affirmative defense to hostile work environment claims identified in the *Parker v. Warren County Util. Dist.* decision. The threshold element is that no tangible employment action must have been taken against Mr. Crawford as a result of the alleged harassment. If Mr. Crawford was subjected to some sort of employment action, the City cannot, as a matter of law, mount an affirmative defense to his hostile work environment claim. Mr. Crawford concedes that he has not been subjected to an adverse tangible employment action by the City; therefore, the undisputed facts support concluding that the City has proved the first element of its affirmative defense.

The second element of the affirmative defense is that the City exercised reasonable care to prevent and promptly correct the harassing behavior. It is undisputed that the City had anti-discrimination policies in effect between 1992 and 1995 and that these policies were contained in the employee handbook. The policies stated that discrimination was not permitted and informed the employees of the procedure to be followed to file a complaint if the policies were violated. Mr. Haley stated that the policy instructed employees to notify their supervisor about violations, but if their supervisor was involved with the violation to "make the complaint known" to others. He explained that the policies permitted either written or oral complaints and that he and the public works director had an open door policy that enabled employees to speak with them directly regarding problems on the job. Mr. Crawford was aware of the open door policies because he described approximately five instances when he circumvented his immediate supervisors to discuss employment problems either with the public works director or the city manager. This undisputed evidence is sufficient to support a conclusion that the City exercised reasonable care to prevent harassing behavior.

---

[4] *Keeton v. Hill*, No. M1999-02272-COA-R3-CV, 2000 WL 1483208, at *4-5 (Tenn. Ct. App. Oct. 10, 2000) (No Tenn. R. App. P. 11 application filed).

-6-

It is similarly evident, as the trial court found below, that the City acted promptly when Mr. Crawford brought Messrs. Thomason's and Alcorn's discriminatory behavior to the attention of a responsible City official. Within less than one month following Mr. Crawford's conversation with Mr. Cantrell about the problem, the City conducted a thorough investigation and terminated Messrs. Thomason and Alcorn. This undisputed evidence demonstrates, as a matter of law, that the City acted promptly and reasonably to correct the harassing behavior.

The third element of the affirmative defense requires the City to prove that Mr. Crawford unreasonably failed to take advantage of the preventive or corrective measures available to him or that he did not act reasonably to avoid the harassing conduct. Again, the evidence on this point is undisputed. Mr. Crawford conceded that he endured the conduct of Messrs. Thomason and Alcorn from 1992 until 1995 without ever once telling them that he found their comments and actions to be offensive and inappropriate. On occasion, he responded to Mr. Alcorn's statements with racially-charged statements of his own. When asked later why he did not complain about his supervisors' conduct, Mr. Crawford could only reply, "Because I just didn't at the time. I didn't."

During this same period, Mr. Crawford did not talk with either Mr. Cantrell or Mr. Haley about the offensive conduct, even though he was aware that they had an open door policy. Mr. Crawford knew from prior experience in 1994 that Mr. Cantrell tried to respond to an employee's workplace concerns when they were brought to his attention. While Mr. Crawford testified that he attempted on several occasions to make appointments with Messrs. Cantrell and Haley to discuss his supervisors' conduct, he did not follow through with these meetings until May 1995 after his heated argument with Mr. Thomason over his request for compensatory time. The undisputed evidence proves as a matter of law that Mr. Crawford did not take reasonable advantage of the avenues available to him as a city employee to complain about the racial harassment by Messrs. Thomason and Alcorn.

Based on the undisputed facts, we find that the City proved each of the three elements of the affirmative defense to hostile work environment harassment claim recognized in the *Parker v. Warren County Util. Dist.* decision. Accordingly, we affirm the summary judgment, albeit on different grounds from those relied on by the trial court.

### III.

We affirm the summary judgment dismissing Mr. Crawford's claims against the City of Murfreesboro and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to James Edward Crawford and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

-7-